UNITED STATES of America

v.

Sidney STEINSCHREIBER, d/b/a Sidcaps Laboratories, et al.

United States District Court
S. D. New York.

May 25, 1962.

Robert M. Morgenthau, U. S. Atty., S.D.N.Y., for plaintiff.

E. Gayle McGuigan, New York City, for Norman Cappel.

Abraham S. Robinson, New York City, for Sidney Steinschreiber.

RYAN, Chief Judge.

Defendants SIDNEY STEINSCHREIBER, d/b/a SIDCAPS LABORATORIES and NORMAN CAPPEL have moved to dismiss the indictment for legal insufficiency in that the allegation that defendants unlawfully transported unlicensed "normal human plasma" does not charge a violation of the statute—Title

42 U.S.C. § 262(a) and (b); that if construed to charge such a violation the statute is unconstitutional for vagueness.

Counts 1–3 and 7 of the indictment charge the defendant Sidney Steinschreiber with sending, carrying and bringing for sale of normal human plasma, a product analogous to a therapeutic serum, which had not been propagated or manufactured and prepared at a licensed establishment from the State of New York to Cuba in violation of 42 U.S.C. § 262(a) and 18 U.S.C. § 2. Counts 4–6 charge similar shipments from New Jersey to New York.

Counts 8–13 charge the defendant Steinschreiber with false labelling of normal human plasma sold for export to indicate that the plasma had been manufactured at an establishment holding a United States license and that it had been aged for six months and had been irradiated.

Count 14 of the indictment charges all of the defendants with conspiring to violate the licensing requirements of 42 U.S.C. § 262 by manufacturing normal human plasma at unlicensed establishments and transporting it across state lines from Pennsylvania and New Jersey to New York, for export to Cuba and Israel.

It is defendants' contention that "normal human plasma" does not fall within the definition of the term "a therapeutic serum or analogous product * * * applicable to the prevention, treatment or cure of diseases or injuries of man" so as to come within the prohibition of the statute, because the words "therapeutic serum" as there used must be limited to mean a serum containing agents of immunity and used as an antitoxin—which plasma is not. The Government on the other hand maintains that "therapeutic serum or analogous product" is sufficiently broad to encompass normal human plasma.

The statute itself (Sec. 262(a)), does not define therapeutic serum or analogous products or any of the other products

it lists, but merely classifies them by categories: "virus, therapeutic serum, toxin, antitoxin or analogous product, or arsphenamine or its derivatives (or any other trivalent of organic arsenic compound), applicable to the prevention, treatment or cure of diseases or injuries of man * * *." The section is entitled "Regulation of biological products" and is part of the Public Health and Welfare Statute—Title 42. The indictment relates the charge to the statute by defining normal human plasma as "a biological product derived from whole blood", and as "a product analogous to a therapeutic serum".

In the absence of any statutory definition, the terms used must be given their commonly accepted meaning. We on this motion are to decide only whether as a matter of law the facts alleged in the indictment are sufficient to charge a crime under the applicable statute. We do not have before us for decision whether as a scientific fact normal human plasma and therapeutic serum are analogous products. This is a matter to be resolved on the trial by the expert and special knowledge of witnesses who may be called by the Government or by the defendants.

It may be that the Government can establish as scientific facts that *therapeutic* pertains to the art of healing; that *serum* is the clear portion of any animal liquid separated from its more solid elements; especially, the clear liquid which separates in the clotting of blood; that *plasma* is to be distinguished from *serum which is plasma from which the fibrinogen has been separated in the process of clotting; human or normal plasma* is plasma treated with irradiation to destroy bacteria and virus. (Dorland's Medical Dictionary, 23rd ed. 1957).

We cannot say as a matter of law that the terms "therapeutic serum" or "analogous products" do not encompass any serous fluid used for medical purposes.

The Regulations issued under the Act affecting the coverage of products de-

rived from blood, 42 C.F.R. § 731(h) provide:

> "Definitions.
>
> \* \* \* \* \* \*
>
> "(2) A therapeutic serum is the product obtained from the blood of an animal by removing the clot or clot components and the blood cells and intended for administration by a route other than ingestion.
>
> \* \* \* \* \* \*
>
> "(5) A product is analogous:
>
> \* \* \* \* \* \*
>
> "(ii) To a therapeutic serum, if composed of whole blood or plasma or containing some organic constituent or product other than a hormone or an amino acid, derived from whole blood, plasma, or serum and intended for administration by a route other than ingestion."

The fact that medical or scientific experts might differ on the precise specialized meaning to be given to the statutory term and might dispute a fact upon which defendants' guilt or innocence might rest, and we intimate or find no such conflict, does not mean that the statutory language is so vague as to render the statute void. The language meets the test of constitutionality in that it conveys sufficient warning as to the conduct proscribed when measured by common understanding and practices to put the defendants on notice that what they were doing might run counter to the law. That is all that is required. Berger v. United States, 8 Cir., 200 F.2d 818, 823; Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886.

The charge of mislabeling in violation of Sec. 262(b) which is contained in Counts 8 through 13 is that such mislabeling was on products destined for export. Although neither the purpose of the statute as a whole nor the language of subsection b bears out the argument that the mislabeling section is confined to products moving in interstate commerce, because of the allegation that the mislabeling was on products destined for export it is unnecessary to pass upon this question.

The motion to dismiss the indictment as legally insufficient and as unconstitutional is denied.

So ordered.