UNITED STATES of America

v.

John P. CALISE and Westchester Blood
Service, Inc., Defendants.

United States District Court
S. D. New York.

Aug. 14, 1962.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, New York City, for the United States of America; Stephen E. Kaufman, Richard A. Givens, Asst. U. S. Attys., of counsel.

Longo & Torrisi, Mt. Vernon, N. Y., for defendants; Joseph F. Longo, Mt. Vernon, of counsel.

CASHIN, District Judge.

The voluminous eighty count indictment in the above entitled action charges defendants, John P. Calise and Westchester Blood Service, Inc., with several types of violations of the Public Health Service Act and the Federal Food, Drug and Cosmetic Act, and a conspiracy to violate those statutes.

■ The defendant John P. Calise moves to dismiss as to himself on the ground that although each count of the indictment sets forth his name as a co-defendant to the alleged unlawful acts, "the counts and allegations show only acts of alleged wrongdoing committed by Westchester Blood Service, Inc., and attributes no unlawful act to John P. Calise."[1] This argument is without substance. The counts of the indictment each charge the defendant John P. Calise with offenses in the relevant statutory wording. The fact that the offenses alleged concern blood products sold by the defendant Westchester Blood Service, Inc. does not exculpate Calise from criminal responsibility for the acts charged in the indictment. 18 U.S.C. § 2.

■ Defendants urge that counts 59–75 are vague because they do not show whether the blood number listed is claimed to be the number purporting to identify the pint of blood or the number which in fact identified the pint of blood.[2] The defendants' claim of vagueness is without merit, especially in view of the fact that the government has already voluntarily supplied a bill of particulars specifying that the blood numbers listed are those used by the defendants.

■ As for the defendants' general objection that all of the counts of the indictment should be dismissed on the ground that " * * * the same are vague, ambiguous, indefinite, uncertain and do not apprise the defendants of any alleged offense",[3] their objection is groundless. The counts substantially follow the terminology of the statutes and they plainly inform the defendants of that which they are accused. The counts of the indictment are sufficiently definite and plain so as to eliminate entirely any possibility that the defendants will be misled as to the offenses with which they stand charged. See United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). The defendants' objections upon the same grounds to Count 80 in particular must likewise fail for the reasons stated above.

■ The defendants further assert that counts 31 through 48 inclusive, and counts 55, 56, 57, 58, 59, 60, 62, 65, 66, 67, 70, 72 and 80, alleging violations of the mislabeling provisions of 42 U.S.C. § 262(b), are not within the jurisdiction of this court because the acts complained of occurred entirely within the boundaries of the State of New York.[4] The subsection reads as follows:

"(b) No person shall falsely label or mark any package or container of any virus, serum, toxin, antitoxin, or other product aforesaid; nor alter any label or mark on any package or container of any virus, serum, toxin, antitoxin, or other product aforesaid so as to falsify such label or mark."

---

1. Motion to dismiss, par. 1.

2. Motion to dismiss, par. 4.

3. Motion to dismiss, par. 7.

4. Motion to dismiss, par. 3.

The language in subsection (b) does not indicate that Congress intended the effect of the statute to be confined merely to products moving in interstate commerce. The restrictive interpretation of subdivision (b) which the defendants urge is not persuasive, in view of the fact that Congress could very easily have expressed such an intention in the Public Health Service Act, as it was cautious to do in 21 U.S.C. § 331(k) where such an intention actually existed. Furthermore, the manner in which Congress separated the mislabeling ban of Section 262(b) from the labeling requirements of Section 262(a) (2) would seem to be indicative of an intention that Section 262(b) was to reach further in its scope from Section 262(a). To restrict Section 262(b) exclusively to products moving in interstate commerce would also be inconsistent with the general purpose of the Public Health Service Act as a whole, because such an interpretation would encourage unscrupulous distributors to sell falsely labeled products on the local market which have been marked so as to apparently meet federal standards, but which do not meet those standards. This would grant such distributors a definite advantage in competing with those who sell interstate products which fulfill the licensing and labeling requirements of 42 U.S.C. § 262(a).

■■ Defendants urge that counts 2, 52 and 53 are specifically defective in that, it is claimed, there is no allegation that the blood labels referred to in the above counts were updated.[5] Counts 2, 52 and 53 contain allegations of "Days Updated" of 42plus, 4plus, and 4plus days respectively. Although it is true that the allegations are not as explicit in counts 2, 52 and 53 as the other counts, there can be no question as to their sufficiency. The counts sufficiently inform the defendants of the elements of the crime so that they may prepare their defense and plead the judgment as a bar to any future prosecution. Hagner v. United States,

285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

■ The defendants make several objections to the conspiracy Count 80. It is first argued that Count 80 is barred by the statute of limitations because "more than three years have elapsed since the alleged offense was committed from the date of the indictment."[6] Since the applicable statute of limitations is five years, the defendants are in error. 18 U.S.C. § 3282, as amended 1954. Defendants also assert that although Count 80 alleges that from on or about January 1, 1959 the defendants conspired with other persons to violate certain laws of the United States, the count is invalid because the earliest overt act alleged to have been committed in furtherance of the conspiracy was not committed until substantially later, i. e. May 1960. The point is not well taken. Since the allegation is one of a continuing conspiracy, the Government may prove that the conspiracy was formed at any time during the period referred to in the indictment. Count 80 is sufficient in all respects.

■ The indictment further alleges that the defendants falsely labeled and marked and altered a label and mark on a container of whole human blood, "a product analogous to a therapeutic serum and applicable to the prevention, treatment and cure of diseases and injuries of man." The Government maintains that the term "therapeutic serum" or "analogous product", as used in Section 262 of Title 42, is broad enough to encompass normal human blood. It is the defendants' contention, however, that whole human blood is not a serum, and does not come within the purview of Section 262.[7] The same contention has heretofore been rejected in this district. See United States v. Steinschreiber, (218 F.Supp. 426, May 25, 1962). It cannot be said as a matter of law that the statutory terms do not include any serous fluid used for medical purposes. The

5. See defendants' Memorandum, p. 15.

6. Motion to dismiss, par. 6.

7. Defendants' Memorandum, p. 11.

scientific facts will have to be determined at trial and, of course, such determination will be dependent upon the expert and authoritative scientific evidence adduced at that time. The Government has, however, in its indictment sufficiently charged the defendants with a crime under the statute.

 The defendants further allege that the indictment fails to state an offense against the United States in that 21 U.S.C. § 321(g) is unconstitutional. It is claimed that the definition of "drugs" appearing therein is so "indefinite and uncertain that it contains no ascertainable standard of guilt thereby violating the first essential of due process of law." [8] Since the Government is relying solely upon Section 321(g) (2), it will be unnecessary to discuss defendants' objections to Section 321(g) (1). Section 321(g) (2) defines drugs as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." There can be no question but that the defendants dealt in blood products for their use in the treatment of human disease. I, therefore, hold that the whole human blood referred to in the indictment would constitute a "drug" within the meaning of the statute. The language of Section 321(g) (2) clearly complies with the test of constitutionality. It gives adequate warning to ordinarily intelligent persons as to what manner of conduct is prohibited. It is explicit enough to place defendants on notice that what they were doing might run counter to the law.

 Counts 76 through 78 allege that the defendants unlawfully sold in interstate commerce " * * * a product analogous to a therapeutic serum and applicable to the prevention, treatment and cure of disease and injuries of man, to wit, washed cells from human blood, which had been propagated, manufactured, and prepared at an establishment which did not hold a license issued by the Secretary of Health, Education and Welfare." 42 U.S.C. § 262(a) provides:

"No person shall sell, barter, or exchange, or offer for sale * * * any virus, therapeutic serum, toxin, antitoxin, or analogous product * * *, applicable to the prevention, treatment, or cure of diseases or injuries of man, unless (1) such virus, serum, toxin, antitoxin, or other product has been propagated or manufactured and prepared at an establishment holding an unsuspended and unrevoked license * * *."

Count 79 also involves an interpretation of the same statute.

The defendants claim that blood cannot be "propagated" or "manufactured and prepared" except in the body of a person, and that therefore blood cannot be one of the products to which Congress intended the licensing statute to apply. Although this argument is truly ingenious, it must be rejected because if it were correct then nothing which is ultimately derived from nature would ever be capable of subsequently being "manufactured and prepared." The word "manufactured" as employed in this statute obviously was intended to include "processing" within its signification. Unless the correct sanitary precautions were taken by the defendants, any processing of blood products by them could seriously imperil the health of patients. For this reason the establishment is required to be licensed under 42 U.S.C. § 262(a). The construction of the terminology which I have adopted is in accord with the purpose intended by Congress in enacting the statute. See H.R.Rep. No. 2713, 57th Cong., 1st Sess. (1902) on H.R. 15289.

 The defendants next allege that their rights were violated in the Grand Jury proceedings.[9] Their allegation that unauthorized persons may have been present while the Grand Jury was in session has no proof to substantiate it.

---

8. Defendants' Memorandum, p. 4.

9. Motion to dismiss, par. 5.

The affidavits of the Foreman of the Grand Jury and of the Assistant United States Attorneys that no such unauthorized persons were ever present are uncontradicted by defendants. The defendants' objections on that ground must therefore be rejected. In like manner must be rejected the request that the indictment be dismissed because newspaper articles published during the Grand Jury session were so slanted that they prejudiced the deliberations. The record is barren of any evidence whatsoever that the Grand Jury did not proceed conscientiously and without prejudice upon independent evidence taken under oath before it.

■ I reject the defendants' claim that the indictment should be dismissed on the ground that "there was insufficient evidence before the Grand Jury to warrant an indictment." [10] The indictment is valid on its face and was returned by an unprejudiced and legally constituted Grand Jury. As such, it is sufficient to call for a trial on the merits without a review by this court of the weight of the evidence before the Grand Jury. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The other objections made by defendants to the procedure of the Grand Jury are also rejected.

■ The defendants further move for dismissal of the indictment on the ground that evidence presented to the Grand Jury was obtained by illegal search and seizure. The uncontradicted affidavits submitted by the Government in opposition to the defendants' motion show, however, that the evidence referred to was lawfully appropriated by Dr. Tripp, a Public Health Service official. It was trash, in the nature of *bona vacantia*,[11] which the defendants had abandoned for collection by a trash truck after the lease of the premises in which they formerly did business had expired.

And since the permission of the owner of the building was obtained for entering the premises, there is nothing at all to indicate that the appropriation of this abandoned material constituted an illegal search or seizure. In any event, by affidavits which the defendants have failed to contradict, it has been shown that such material was not even submitted to the Grand Jury. The defendants' objections are groundless.

Coming to the procedural motions, the defendants' motion for a bill of particulars is denied except to the extent that the Government has supplied the requested information in the bill of particulars voluntarily filed.

■ The Government has consented to an order allowing the attorneys for the defendants to inspect or copy or photograph all books, papers, documents and tangible objects obtained from or belonging to the defendants. The defendants' request for a similar order with regard to all such documents and objects obtained from others by seizure or process is denied. United States v. Haug, 21 F.R.D. 22 (N.D.Ohio 1957). The denial is, however, without prejudice to a renewal of the motion in reference to specific documents and objects upon an adequate showing that they are necessary and material to the preparation of the defendants' case.

The defendants' requests for the return of the matter appropriated by Dr. Tripp, for the suppression of the defendant John P. Calise's testimony at the Grand Jury session, and for inspection of the Grand Jury minutes, are denied.

In sum, therefore, all defendants' motions are denied, with the exception of the copying, inspection and photographing of items obtained from the defendants, and the bill of particulars voluntarily filed by the Government.

It is so ordered.

10. Motion to dismiss, par. 5(d).

11. See United States v. Abel, 362 U.S. 217, 240–241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).