**Maxine BLANK, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 23678.**

United States Court of Appeals
Fifth Circuit.

Sept. 6, 1968.

Paul Frederick Rothstein, Austin, Tex., Joel J. Finer, Stanford, Cal., for appellant.

B. H. Timmins, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before TUTTLE, THORNBERRY and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant was assistant manager and corporate secretary of a blood bank licensed by the Secretary of Health, Education and Welfare.[1] She was convicted under 42 U.S.C.A. § 262(b) on counts one through eleven and thirteen through twenty-five charging false labeling and marking of either citrated whole blood (human)[2] or packed red blood cells (human),[3] products "analogous to therapeutic serum." Also she was convicted on count twenty-six charg-

---

1. 42 U.S.C.A. § 262(a), (d).

2. Whole human blood to which a chemical has been added to prevent clotting.

3. Red cells extracted from human blood and packed by centrifugal force.

ing introduction into interstate commerce of a drug, citrated whole blood, which was misbranded in violation of 21 U.S.C.A. § 331(a), and on count twenty-seven charging a conspiracy to commit the violations described in the other counts.

Section 262(a) prohibits the sale of any falsely labeled or unlicensed "virus, therapeutic serum, toxin, antitoxin, or analogous product, or arsphenamine or its derivatives (or any other trivalent organic arsenic compound), applicable to the prevention, treatment, or cure of diseases or injuries of man." Section 262(b) [4] picks up the enumeration of sub-section (a) via the phrase "or other product aforesaid."

This appeal raises three questions: (1) whether as a matter of statutory construction citrated whole blood and packed red blood cells are analogous products to a therapeutic serum; (2) if so, whether § 262(b) is unconstitutionally vague; and, (3) did the district court err in submitting to the jury the question whether citrated whole blood and packed red blood cells are analogous products within the meaning of the statute?

■ The predecessor of § 262 prohibited the sale of any unlicensed or falsely labeled "virus, therapeutic serum, toxin, antitoxin, or analogous product applicable to the prevention and cure of diseases of man." Act of July 1, 1902, ch. 1378, § 1, 32 Stat. 728. It sought

> to regulate the manufacture and sale of certain substances of animal origin which, except vaccine virus, have but recently come into general use for the prevention and cure of disease. The purity of these substances is of far more importance than is the purity of

ordinary drugs, because the former are ordinarily introduced into the circulation directly while the latter are introduced through the digestive tract.

S.Rep. No. 1980, 57th Cong., 1st Sess. 2 (1902); H.R.Rep. No. 2713, 57th Cong., 1st Sess. 2 (1902). At the time this act was passed the products here involved were unknown. Indeed the entire process of blood transfusion was then unknown. Thus Congress could not have intended to include citrated whole blood or packed red blood cells within the term "analogous product."

In 1944 when the scattered sections pertaining to the Public Health Service were codified, Congress reenacted the 1902 statute. The pertinent language was amended in two respects. To the earlier enumeration was added "arsphenamine or its derivatives (or any other trivalent organic arsenic compound)," and the next following phrase was amended to read "applicable to the prevention, treatment, or cure of diseases *or injuries* of man." Act of July 1, 1944, ch. 373, § 351(a), 58 Stat. 702. It is this language which now appears at 42 U.S.C.A. § 262(a).

The administrative regulations in effect at the time of the 1944 revision defined a serum as "the product obtained from the blood of an animal by removing the clot or clot components and the blood cells." A product was said to be analogous "to a serum, if prepared from some protein constituent of the blood and intended for parenteral [5] administration." 42 C.F.R. § 22.11 (Supp.1940); see 42 C.F.R. § 22.11 (1938). Thus at the time of the most recent enactment of § 262 there was no administrative construction of "analogous product" which

---

4. 42 U.S.C.A. § 262(b) provides that "no person shall falsely label or mark any package or container of any virus, serum, toxin, antitoxin, or other product aforesaid; nor alter any label or mark on any package or container of any virus, serum, toxin, antitoxin, or other product aforesaid so as to falsify such label or mark."

5. Parenteral is defined as "not intestinal: situated or occurring outside the intestine * * * injected or for injection subcutaneously, intramuscularly, or intravenously." Webster's Third New International Dictionary 1641 (1967).

can be read as including within its scope whole blood and packed red blood cells.

■ The products enumerated in the 1902 statute are immunological agents. "Serum" is "1) the clear portion of any animal liquid separated from its more solid elements; especially the clear liquid which separates in the clotting of blood from the clot and the corpuscles. 2) Blood serum from animals that have been inoculated with bacteria or their toxins."[6] Serum's principal, if not sole, therapeutic function is as a passive immunological agent; that is, therapeutic serum contains antitoxic or antibacterial antibodies which neutralize or counteract toxins or bacteria.[7] Serum is administered by injection and is used in the prevention, treatment and cure of such diseases as mumps, pertussis, diphtheria, scarlet fever, pneumonia and meningitis.[8] Toxins, antitoxins and viruses also are immunological agents. Toxins (toxoids)[8A] and viruses[8B] are active in that they generate the production of antibodies; antitoxins are passive, containing preformed antibodies.[9]

Neither citrated whole blood nor packed red blood cells is medically employed for immunological purposes. Their function is to replace blood or blood components which a patient has lost through disease or injury. Neither of the products described in the indictment is prepared from therapeutic serum, and therapeutic serum is not prepared from them. Serum cannot perform the medical functions of either of the described substances, and neither of them performs the functions of therapeutic serum.

The addition of the term "or injuries" in the 1944 reenactment could be read as expanding the coverage of the 1902 act beyond products used as immunological agents, and perhaps as extending coverage to include whole blood or packed red cells, which are used in the treatment of injuries. However, from the congressional debates on the 1944 revision it is apparent that no substantive change (other than the addition of arsphenamines and derivatives) in the 1902 act was intended. 90 Cong.Rec. 4796 (1944); see 90 Cong.Rec. 6486 & 6487 (1944) (remarks of Senators Thomas and Hill). Our conclusion that the 1944 act did not embrace whole blood or packed blood cells within the term "analogous product" is further supported by the absence of any administrative interpretation at the time the act was passed which reasonably can be read as including either of these products within the coverage of the section.[10]

The government asserts two grounds of analogy between therapeutic serum and the substances described in the in-

6. Dorland, American Illustrated Medical Dictionary 1311 (21st ed. 1948).

7. See, e.g., Prophylactic Immunization and Serotherapy, 7 Cyclopedia of Medicine, Surgery, Specialties 198n (rev. ed. 1966); Treffers, Serology and Immunochemistry, in Bacterial and Mycotic Infections of Man 119 (Dubos ed. 1952); Webster's Third New International Dictionary (1967) (entries for "serum" and "antitoxin").

8. See generally Bacterial and Mycotic Infections of Man, supra.

8A. Toxoids are detoxified toxins.

8B. Viruses are used in the preparation of viral vaccines.

9. Remington, Pharmaceutical Sciences 1463 (13th ed. 1965).

10. Regulations in force at the present time state that a product is analogous "to a therapeutic serum, if composed of whole blood or plasma or containing some organic constituent or product other than a hormone or an amino acid, derived from whole blood, plasma, or serum, and not intended for ingestion." 42 C.F.R. § 73.1(i) (5) (ii) (1968). Had such a regulation been in force in 1944 the government would have more support for its argument that Congress broadened the scope of the 1902 act by reenacting it in light of existing administrative interpretation which brought whole blood and packed blood cells within the term "analogous product." Because no such regulation was in existence, and because of congressional disclaimers of broadening the substance of the 1902 act, we reject the government's contention.

dictment—each is obtained from animal blood and each is given by injection rather than ingestion. A common soùrce is a factor of little, if any, value in determining whether products are analogous. Blood is a common source of numerous products but that fact sheds little light on whether the products, in the primary sense of analogy,[11] have attributes or effects that resemble one another, or in the broader sense of analogy the products are similar or corresponding. Many serums, some fertilizers, beef extracts for human consumption, and blood sausage all have their source in blood, but this does not make them analogous. Injection is a meaningful element of analogy but its impact is not great. If it were of much force there would be brought within the ambit of the statute thousands of drugs having not even remote relation in any other attributes to other products named in the statute—anesthetics, vitamins, pollen extracts, and narcotics, to name only a few.

We are aware of only two reported cases involving criminal prosecutions pursuant to § 262 for mislabeling whole human blood or blood products. United States v. Steinschreiber, 218 F.Supp. 426 (S.D.N.Y.1962), 219 F.Supp. 373 (S.D.N.Y.1963), aff'd, 326 F.2d 759 (2d Cir. 1964) (per curiam), held normal human plasma was a product analogous to therapeutic serum. The court's conclusion

rested in part on a factual determination that "[f]or many therapeutic uses plasma and serum are interchangeable, and the same constituent elements which are significant in such therapeutic uses are present in both." 219 F.Supp. at 382. It is readily apparent that this finding distinguishes *Steinschreiber* from the case before us. In United States v. Calise, 217 F.Supp. 705 (S.D.N.Y.1962), it was held that whole human blood could not be said, as a matter of law, to fall without the statutory category of products analogous to a therapeutic serum.[12] The considerations set out above lead us to a contrary conclusion.

Because we hold the products named in the indictment are not within the terms of § 262 it is unnecessary for us to reach the contention the statute is unconstitutionally vague. Our view of this portion of the case also pretermits the question whether the district court erred in submitting the scope of the term "analogous product" to the jury.

Thus far we have been concerned only with the counts of the indictment charging violations of 42 U.S.C.A. § 262(b). Appellant was also convicted on count twenty-six of the indictment, which charged that she introduced a misbranded drug (citrated whole blood) into interstate commerce. The only arguments on appeal with respect to the conviction on this count are that the evidence was conflicting and that there was

11. The term "analogy" has differing primary and secondary meanings. Webster's New International Dictionary 94 (2d ed. 1938) gives the primary meaning as:

"A relation of likeness *between* two things or *of* one thing *to* or *with* another, consisting in the resemblance not of the things themselves but of two or more attributes, circumstances or effects; thus, the *analogy* between sleep and death lies in the attendant cessation of activity and appearance of repose; and learning *enlightens* the mind because it is to the mind what *light* is to the eye, enabling it to discover things before hidden. *Analogy* is very commonly used to denote similarity or essential resemblance; but its specific meaning is a similarity of

*relations,* and in *example* and that from *analogy.* In the former we argue from the mere similarity of two things, in the latter from the similarity of their *relations.*"
A secondary meaning is: "Resemblance of things; correspondence; similarity."

12. "It cannot be said as a matter of law that the statutory terms do not include any serous fluid used for medical purposes. The scientific facts will have to be determined at trial and, of course, such determination will be dependent upon the expert and authoritative scientific evidence adduced at that time. The Government has, however, in its indictment sufficiently charged the defendants with a crime under the statute." 217 F.Supp. at 708–709.

a danger of cross-count jury prejudice. Both contentions are without merit. The district court carefully and correctly instructed the jury on the law relevant to count twenty-six. Conflicts in the evidence were for the jury to resolve, and the conflicts here were resolved adversely to appellant. Although the trial on this multi-count indictment was lengthy, and the evidence, both oral and documentary, was voluminous, we are unable to perceive the existence of "cross-count prejudice" from these circumstances alone. The charge to the jury drew a clear distinction between count twenty-six and the other counts of the indictment, and the jury rendered its verdict separately on each count. In the absence of some showing to the contrary we must assume the jury faithfully carried out its duty of finding the facts and applying the law as set forth in the court's charge.

Accordingly, the convictions on counts one through eleven, thirteen through twenty-five, and twenty-seven, are reversed, and the conviction on count twenty-six is affirmed.