333 So.2d 354 (1976)
Rodney JUNEAU et al., Plaintiffs-Appellants,
v.
INTERSTATE BLOOD BANK, INC. OF LOUISIANA, et al., Defendants-Appellees.
No. 5440.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1976.
Rehearing Denied June 30, 1976.
Writ Refused September 29, 1976.
*355 Gravel, Roy & Burnes, by Gary Boland, Alexandria, for plaintiffs-appellants.
Provosty & Sadler, by Ledoux R. Provosty, Jr., Alexandria, Gist, Methvin & Trimble, by H. B. Gist, Jr., Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
Mr. and Mrs. Rodney L. Juneau filed this action for damages against Interstate Blood Bank, Inc. of Louisiana, Interstate Blood Bank, Inc. of Tennessee, Sisters of Charity of Incarnate Word of the Diocese of Galveston, Inc. and their insurer, Argonaut Insurance Company. Plaintiffs contend that Mrs. Rodney L. Juneau contracted serum hepatitis as a result of having received two (2) pints of blood while a patient at St. Francis Cabrini Hospital in Alexandria, Louisiana. The trial judge dismissed plaintiffs' suit and they have perfected this appeal.
We affirm.
The trial judge in a comprehensive and well reasoned opinion disposed of all the issues presented in this case. We adopt his opinion as our own:
"The facts are generally undisputed.
*356 Mrs. Juneau was admitted to St. Frances Cabrini Hospital by Dr. Gordon Bowers on September 28, 1971 for the purpose of undergoing a hysterectomy. Dr. Bowers ordered, and the patient was administered, one pint of whole blood the night prior to and one pint of whole blood the morning of surgery. The blood that was administered to Mrs. Juneau was supplied to the defendant hospital by Interstate Blood Bank, Inc. of Louisiana, a subsidiary of Interstate Blood Bank, Inc. of Tennessee. The operation was successful. On October 4, 1971, after an uneventful recovery, Mrs. Juneau was discharged. Around Thanksgiving of 1971, Mrs. Juneau began experiencing pains in her joints, nausea, and extreme tiredness. In December of 1971, Mrs. Juneau visited Dr. John Lemoine of Bunkie complaining of poor health. Dr. Lemoine diagnosed Mrs. Juneau's ailments as serum hepatitis and treated her until she recovered. This suit for general and special damages followed.
Defendants present the initial argument that plaintiffs have failed to prove that Mrs. Juneau contracted hepatitis from the blood supplied and administered by defendants. From the testimony of Mr. and Mrs. Juneau and the expert medical testimony, this Court is of the opinion that it is more probable than not that the plaintiff did indeed incur her illness as a result of the blood transfusions in question. Able counsel for plaintiffs has asserted several theories upon which recovery should be granted. Recovery is denied but each argument merits treatment. Although this is a suit which lends itself to resolution based upon public policy considerations, adequate foundations and legal theories and precedents exist for its disposition.

I. NEGLIGENCE
Although plaintiffs did not strenuously argue negligence, this issue was in fact set out in the petition and should be dealt with. Plaintiffs have not demonstrated any actionable breach of duty on the part of any of the defendants. The supplying blood bank screened donors and tested blood in accordance with the latest accepted guidelines in effect at that time. The hospital followed the normal accepted procedures in administering the blood. This Court is of the opinion that none of the defendants were negligent in their actions.

II. WARRANTY
Plaintiffs contend that they may recover under a warranty theory due to the unconstitutionality of Article 1764 B of the Louisiana Civil Code. That article, as amended in 1968, specifically excludes all implied warranties in the sale of blood, and plaintiffs so concede.
The constitutionality of Article 1764 B was presented to the Fifth Circuit Court of Appeal in Heirs of Fruge v. Blood Services, et al, 506 F.2d 841 (5th Cir. 1975). Although not binding as law upon this court, the Court's reasoning in Fruge, supra, is correct and dispositive of this issue.
The plaintiff in Fruge, supra, contended, as do the plaintiffs at bar, that the legislature may not, acting consistently with limitations imposed by the State Constitution, eliminate causes of action already provided by the positive law of the Civil Code for the benefit of a specific individual or organization. That Court said:
`For over 50 years, the Louisiana courts have recognized the validity of legislative regulation of causes of action, including replacement and even extinction, that one person may have against another for personal injuries.'
The Court further held:
`... as long as a privilege or immunity "operates equally and fairly to those who engage in like transactions" and "affects alike all persons pursuing the same business under the same conditions," the Louisiana Constitution is satisfied.' *357 The Fifth Circuit found, and this Court holds, that:
`Because the article applies with such generality to all those who provide the vital medical service of supplying blood and blood componentssuch as blood banks, hospitals, and the likeit easily satisfies the well-established tests of constitutionality as a valid exercise of legislative authority.' 506 F.2d 841, 848, 849 (5th Cir. 1975).
If legislatures are to be allowed to single out groups and activities for regulation, based on sound societal needs, the legislative activity in this field is steeped in constitutionality. The need for blood and its components is essential in today's medical science. The need for protection of these supplies is dictated by these societal needs. The legislature, in acting to meet these needs, was fulfilling its duties to the people of this state.
Plaintiffs further contend that their access to the courts is eliminated. Article 1764 B of the Louisiana Civil Code does not totally immunize suppliers of blood from liability. Where the suppliers have been negligent in failing to meet the standard of care imposed by their duty owed to blood recipients, recovery will be allowed. This case does not fall within the ambits of that rule, for no negligence has been demonstrated.
Over 40 state legislatures have seen fit to afford similar protection by statutes such as Article 1764 B of the Louisiana Civil Code. The statutes, to date, have withstood constitutional attacks. cf. McDaniel v. Baptist Memorial Hospital, 469 F.2d 230, 235 (6th Cir. 1972).
Finding Article 1764 B to be within permissible constitutional bounds, no claims to recovery based on implied warranty exists. That article specifically and emphatically precludes the existence of implied warranties on the sale of blood.

III. VIOLATION OF LOUISIANA'S PURE FOOD AND DRUG LAW
Plaintiffs contend that the defendants violated Louisiana's Pure Food and Drug Law by placing an adulterated drug on the market.
Blood is not, in the opinion of this court, a `drug' within the intendment of the act. Although Louisiana R.S. 40:602 defines a drug as including all substances intended for use in the diagnosis, treatment and prevention of diseases, this court holds that the legislature had conventional drugs and potents in mind. Human blood is a tissue, and to hold that it is a drug within the contemplation of the statute would open the door to contentions that kidneys or eyes or even the heart are also drugs. Like blood, these items are organs or tissues of the body and they too are prescribed at various times during medical treatment yet are not drugs. This being the case, blood, which is of the same nature, is likewise not a drug.
Even if the transfused blood were classified as a drug, it cannot be considered adulterated. The act defines adulterated drug as one `which consists in whole or in part of any filthy, putrid or decomposed substances.' The blood given to Mrs. Juneau contained the hepatitis virus. A virus is not `filthy' or `putrid' as those words are generally defined. Again, referring to, but not relying on, a case in the Federal Courts, it is noted that other courts have reached the same result. In Merck & Co. v. Kidd, 242 F.2d 592 (6th Cir. 1957) the Court in dealing with the identical contention likewise found the virus not to be a `filthy substance'. The Louisiana Legislature had totally different considerations in mind when it enacted Louisiana R.S. 40:602, et seq. The act has reference to impurities which were introduced to the drug during processing or handling and not to vital agents.
If this Court were to hold that blood is a drug and that the hepatitis virus in the *358 blood rendered it adulterated, the plaintiffs must still fail. To be violative of the act in question, it must be shown that the defendants did not take the necessary steps to render the blood free of any defects or contaminations. In the case at bar, the evidence satisfies this Court that the defendants followed the accepted detection guidelines in effect at that time. Despite their efforts the virus went undetected.

IV. STRICT LIABILITY
The plaintiffs presented a formidable argument for recovery based upon the strict liability theory set forth by the Louisiana Supreme Court in Weber v. Fidelity & Casualty Company, 259 La. 599, 250 So.2d 754 (1971). This argument is rejected.
The Weber case, supra, held that a manufacturer of a defective product is liable when it is shown that the defects rendered the product unreasonably dangerous to normal use. No negligence is required.
The first problem encountered in applying the Weber decision is where the blood is a product. The legislature, in Louisiana Civil Code Article 1764 B, states that the furnishing of blood is to be considered as a service and not a product. This, plaintiffs counter with the proposition that blood is a service only for the purposes of warranty. It seems doubtful that the legislature, in attempting to establish a broad protection for blood suppliers, would have so restricted the definition. Circumvention of this public policy would be instantaneous. The legislature intended for the furnishing of blood to be considered a service for all purposes.
Plaintiffs' argument also falls of its own weight in another way. Plaintiffs, as stated above, contend that blood is a service only for purposes of warranty, and yet plaintiffs, state that Weber, supra, `incorporates the warranty notion of strict liability.' If that decision does indeed incorporate warranty notions, it must incorporate the notion that blood is a service and not a product. Warranty, according to the plaintiffs, is the only place that that principle is applicable.
Even if this Court were to consider blood as a product, the blood was not unreasonably hazardous to normal use under the Weber criteria.
The question must become what is `unreasonably dangerous'. Plaintiffs seemingly contend that the blood was obviously unreasonably dangerous because Mrs. Juneau became ill. This can not be the test. Reasonableness must be determined in light of the need for blood transfusions compared to the likelihood of contracting hepatitis from the transfusions. Blood is vital in surgical procedures. Patients would often die without it. Although it is true that the possibility of contracting hepatitis does exist in any transfusion, the great need for these transfusions vastly outweighs the possible risks. Added to this consideration is the fact that the latest of techniques are applied to minimize the risk. With this balancing process in mind, this Court holds that blood, after being screened and tested in accordance with the accepted guidelines, cannot and should not be considered to be unreasonably dangerous to normal use. Courts in other jurisdictions have also faced these same arguments and have reached the same conclusions. cf. Hines v. St. Joseph's Hospital, 86 N.M. 763, 527 P.2d 1075 (1974); Balkowitsch v. Minneapolis War Memorial Blood Bank, 270 Minn. 151, 132 N.W.2d 805 (1965); Shepard v. Alexian Brothers Hospital, Inc., 33 Cal.App.3d 606, 109 Cal.Rptr. 132 (1973).

V. MISCELLANEOUS
Plaintiffs also contend that St. Frances Cabrini Hospital is not covered by Article 1764 B's protective cloak. That article refers to a `blood bank or reservoir of such other tissue or organs.' As previously stated, this Court holds that the legislature sought to afford protection to all those engaged in the vital task of furnishing *359 blood. If the legislature would have allowed hospitals to remain open to liability, its policy of insuring the adequate supplying of blood would be a dismal failure. Although blood banks would be protected, the libility visited upon administering hospitals would soon force those institutions out of this vital field of service. This Court also holds that `reservoir' includes hospitals and extends to them the protection afforded by Louisiana Civil Code Article 1764 B."
For the above and foregoing reasons, the judgment of the trial court is affirmed at the cost of plaintiffs-appellants, Mr. and Mrs. Rodney L. Juneau.
AFFIRMED.