341 So.2d 1242 (1976)
Herbert KOPPENOL et al., Plaintiffs-Appellants,
v.
ST. TAMMANY PARISH HOSPITAL et al., Defendants-Appellees.
No. 11033.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writ Refused March 31, 1977.
Garic K. Barranger, Covington, for plaintiffs-appellants.
Dermot S. McGlinchey, Frederick B. Alexius, New Orleans, for St. Tammany Parish Hospital.
William S. Penick, New Orleans, for New Orleans Blood Bank, Inc.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
SARTAIN, Judge.
It is alleged that Gail Koppenol contracted serum hepatitis as a result of a blood transfusion administered to her on March 15, 1974, during the course of surgery. She, together with her husband, instituted the present action for special and general damages against St. Tammany Hospital, their liability insurer, Argonaut Insurance Company, and New Orleans Blood Bank, Inc., the supplier of the whole blood (defendants).
Plaintiffs' suit is couched in terms of strict liability and traditional negligence. The issue as to the latter grounds are not before us. The applicability of the doctrine of strict liability was raised via a motion for partial summary judgment filed by the defendants, who contend that C.C. Art. 1764(B), infra, precludes any recovery by plaintiffs "under any implied warranty incidental to the transfusion of human or blood plasma by defendant(s)." The trial judge agreed and rendered judgment dismissing plaintiffs' petition insofar as it seeks relief under the theory of express or implied warranty, strict liability, or any legal theory other than negligence. It is from this judgment that plaintiffs have appealed. We affirm.
At the outset we should note the significance of the application of strict liability vis a vis negligence.
"The invocation of strict liability brings with it a corresponding change in the conventional rights and responsibilities of the parties in a delictual action. In essence, it is liability without proof of specific substandard conduct. All that is required is that the plaintiff prove a defect in the product; that at the time of its failure it was in normal use; that it *1243 was unreasonably dangerous in that use; and that the injuries were caused by the defect. The defenses in such an action are the negative of any of the above plus the assumption of risk as distinguished from contributory negligence. Hastings v. Dis Tran Products, Inc., 389 F.2d 1352 (W.D.La.1975); and Langlois v. Allied Chemical Corporation, above."
Jim Dixon, Jr. v. J. E. Gutnecht, et al., 339 So.2d 1285 (1st La.App., 1976).
C.C. Art. 1764 was amended by Act 301 of 1968 by adding in pertinent part Section B thereof which reads as follows:
"Notwithstanding the provisions of Section A.2. of this Article, the implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purposes of this Article be considered commodities subject to sale or barter but shall be considered as medical services."
Plaintiffs frankly submit that their allegations in support of strict liability "are made in the teeth of" the aforementioned amendment to C.C. Art. 1764. However, they contend that the amendment itself is violative of the due process clause of the Louisiana Constitution of 1974 (Art. 1, Sec. 2) by depriving them of "property, life and the right to pursue happy and healthy life. . . "The essence of the argument being made here is that an unfair discrimination has been exercised by the Legislature against a minority group which was at the time of the passage of the said law unidentificable." Their position is that the enactment of the amendment constitute an invidious discrimination against a class of persons who "were unidentifiable both singly and as a group ..., a class whose constitution was unknown to the individual members thereof at the time of the passage of that law which bound them into a group of scapegoats, to be driven into jaundiced sands of hepatitis to languish and perish that the remaining happy blood recipients might thrive and flourish."
The rationale supportive of the imposition of strict liability in defective products cases is that "public policy demands that the burden of accidental injuries caused by products . . . be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; . . . the consumer. . . is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." Restatement (Second) of Torts, § 402 A (1965), Comment c. For an excellent discussion on products liability in Louisiana, its jurisprudential history and current status, see Robinson, Manufacturers' Liability for Defective Products in Louisiana Law, 50 Tul.L.R. 50 (1975).
Thus the question posed here is whether the amendment to C.C. Art. 1764, above, represents a valid and justified exercise of the legislative power for it does in fact purport to restrict the application of strict liability by denying certain substantive rights in delictual actions to those persons sustaining injuries from transfusions of whole blood or blood plasma. Two Louisiana cases, one state and the other federal, have held in the affirmative, thereby upholding the constitutionality of the act. Juneau v. Interstate Blood Bank, Inc. of Louisiana, 333 So.2d 354 (3rd La.App., 1976), writs refused, 337 So.2d 220 (La.1976); Heirs of Fruge v. Blood Services, 365 F.Supp. 1344 (W.D.La.1973); affirmed, 506 F.2d 841 (5th Cir. 1975).
In Juneau, the court stated:
"If legislatures are to be allowed to single out groups and activities for regulation, based on sound societal needs, the legislative activity in this field is steeped in constitutionality. The need for blood and its components is essential in today's medical science. The need for protection of these supplies is dictated by these societal needs. The legislature, in acting to meet these needs, was fulfilling its duties to the people of this state.

*1244 Plaintiffs further contend that their access to the courts is eliminated. Article 1764 B of the Louisiana Civil Code does not totally immunize suppliers of blood from liability. Where the suppliers have been negligent in failing to meet the standard of care imposed by their duty owed to blood recipients, recovery will be allowed. This case does not fall within the ambits of that rule, for no negligence has been demonstrated.
Over 40 state legislatures have seen fit to afford similar protection by statutes such as Article 1764 B of the Louisiana Civil Code. The statutes, to date, have withstood constitutional attacks. cf. McDaniel v. Baptist Memorial Hospital, 469 F.2d 230, 235 (6th Cir. 1972)." 333 So.2d 354, 357
In Heirs of Fruge, the court in addressing itself to the constitutionality of the amendment reasoned:
"The plaintiffs-appellants challenge not only the construction of Article 1764, but also its state constitutionality. They contend that Article 1764 violates the guarantee of due process, provided for by Article 1, § 2 of the Louisiana Constitution, and the prohibition against the legislative creation of an exclusive right or immunity to an individual in Article 4, § 4. The argument, in essence, is twofold: that 1) the legislature may not, acting consistently with limitations imposed by the state constitution, eliminate causes of action already provided by the positive law announced in the Code, 2) for the benefit of a specific individual or organization.
We are unable to accept this reasoning. For over 50 years, the Louisiana courts have recognized the validity of legislative regulation of causes of action, including replacement and even extinction, that one person may have against another for personal injuries. Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919). The entire scheme of workmen's compensation is grounded on the acknowledgment of this power. Id. Other state courts have repeated this acknowledgment over the years in other areas. See, e.g., Paul v. Nolen, 166 So. 509, 511 (La.App.1936).
This article is no less valid because it is explicitly directed at the suppliers of blood and blood components. Article 4, § 4 of the Louisiana Constitution prohibits the granting of special immunity for `any corporation, association or individual.' The article has been narrowly construed by the Louisiana courts, which have held that `A statute which is applicable to all persons under like circumstances and does not subject any individual to an arbitrary exercise of power does not violate the due process or equal protection clauses of the state and federal constitutions.' Standard Homestead Ass'n v. Horvath, 205 La. 520, 17 So.2d 811, 813 (1944). Thus, as long as a privilege or immunity `operates equally and fairly to those who engage in like transactions' and `affects alike all persons pursuing the same business under the same conditions,' the Louisiana Constitution is satisfied. Id. at 814. See, also, Succession of Vincent, 229 So.2d 449 (La.App. 1969). In the case before us, `[t]he law in question involves all within the class of selling or distributing blood or plasma equally and . . . [t]here appears to be no discrimination in the law favoring the [defendant] per se . . .,' McDaniel v. Baptist Memorial Hospital, supra, 469 F.2d at 235. Because the article applies with such generality to all those who provide the vital medical service of supplying blood and blood components such as blood banks, hospitals and the likeit easily satisfies the well-established tests of constitutionality as a valid exercise of legislative authority.
In conclusion, the only cause of action available to the plaintiffs in this case is negligence, and because the trial court did not pass on the issue and because it is clear that the defendants are no longer immune from liability in negligence, the case is remanded to the trial court for further proceedings on that issue." 506 F.2d 841, 848, 849
*1245 As of this date some forty-seven states have adopted statutes similar to the article under attack here. In each instance where the statute has been questioned, its constitutionality has been upheld. Counsel in the instant case agree that there is no satisfactory method by which a given unit of blood can be tested against viral hepatitis contamination. We must conclude that the legislature has considered and weighed the necessity and need for available blood and blood plasma against the risk of transfusion-associated hepatitis and has concluded that the need warrants the risk. Accordingly, it has seen fit to exclude this type of injury from the application of warranty (implied or express) and strict liability theories. Causes of action sounding in negligence are uneffective. In McDaniel v. Baptist Memorial Hospital, above, the court noted:
"The fact that the important service of blood transfusions has been singled out for legislative treatment, and immunity to some degree is bestowed, does not, in and of itself, make it unlawful or unconstitutional The question is whether the classification is so arbitrary and capricious as to constitute denial of equal protection."
We do not find that C.C. Art. 1764 B is so arbitrary or capricious as to be constitutionally infirm and must therefore affirm.
All costs of these proceedings relating to the instant motion are assessed against appellants. All other costs are to await a final determination on the merits.
AFFIRMED.