849 So.2d 38 (2003)
Rocky Wayne DAVID
v.
OUR LADY OF THE LAKE HOSPITAL, INC.
No. 2002-CC-2675.
Supreme Court of Louisiana.
July 2, 2003.
*40 Eugene R. Groves, William S. McKenzie, Erick Y. Miyagi, Taylor, Porter, Brooks & Phillips, Baton Rouge, Counsel for Applicant.
Keith D. Jones, Jones, Aaron & Smith, Baton Rouge, Counsel for Respondent.
Clark R. Cosse, III, Baton Rouge, Counsel for amici curiae Louisiana Hospital Association and Metropolitan Hospital Council of New Orleans.
Peter T. Dazzio, Chris LeBlanc, Baton Rouge, Counsel for amicus curiae Louisiana Hospital Association Medical.
John E. Baker, Counsel for amicus curiae Louisiana Patient's Compensation Fund Oversight.
John O. Pieksen, Jr., Jack M. Stolier, New Orleans, Counsel for amicus curiae Rural Hospital Coalition Inc.
Stephen G. McGoffin, Daniel C. Palmintier, Lafayette, David R. Sobel, Alexandria, Counsel for amici curiae HCA Health Services of LA Inc., Doctors Memorial Hospital, North Monroe Hospital, Lakeview Medical Center L.L.C., Lakeview Regional Medical Center, Highland Park Hospital, Medical Center of Baton Rouge, Inc., Lakeside Hospital, Women's and Children's Hospital Inc., Galen Medical Inc., Women's and Children's Hospital (Lake Charles), Highland Hospital (Shreveport), Christus Health, Christus St. Frances Cabrini Hospital, Christus St. Patrick Hospital, Christus Schumpert Health System, Voluntary Hospitals of America Inc.
WEIMER, Justice.[*]
We granted this writ to consider whether an individual who contracted hepatitis *41 C from a blood transfusion administered by a hospital in 1979 can bring an action for damages 20 years later if the hospital is held strictly liable for providing contaminated blood. Finding that the prescriptive period of three years[1] provided in LSA-R.S. 9:5628 bars such an action, we reverse the judgments of the lower courts and remand to the district court.

FACTUAL AND PROCEDURAL BACKGROUND
Rocky Wayne David received blood transfusions at Our Lady of the Lake Hospital, Inc. (OLOL) in 1979. The blood was ordered by his treating physician after surgery to remove kidney stones and was collected, processed, and administered by OLOL under the direction of a boardcertified pathologist. Alleging OLOL should be held strictly liable for providing him with blood contaminated with hepatitis C, David filed suit in 1999.
In an exception of prescription OLOL averred David's claim was prescribed pursuant to LSA-R.S. 9:5628 because suit was not filed within three years of his blood transfusions. The trial court denied the exception, concluding plaintiff had one year from actual knowledge of the condition in which to bring his claim.
On February 9, 2001, a five-judge panel of the Court of Appeal, First Circuit granted OLOL's writ application and reversed the trial court's judgment which had overruled the exception of prescription. Citing Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402 (La.4/11/00), 759 So.2d 45, the appellate court held LSA-R.S. 9:5628 applied to plaintiff's claim even though OLOL was not a qualified health care provider under the Louisiana Medical Malpractice Act at the time of the blood transfusion. Thereafter, this court granted a writ application by David and remanded the case to the appellate court for a full opinion. David v. Our Lady of the Lake Hospital, Inc., 01-0656 (La.5/11/01), 792 So.2d 3.
The first circuit issued an opinion denying OLOL's writ application on the basis of Williams v. Jackson Parish Hospital, 00-3170 (La.10/16/01), 798 So.2d 921.[2]
Seeking reversal of the lower courts' rulings on the prescription issue, OLOL filed a writ application with this court, which was granted February 7, 2003. David v. Our Lady of the Lake Hospital, Inc., 02-2675 (La.2/07/03), 836 So.2d 81.

DISCUSSION
The sole issue before this court is whether the prescriptive period for a strict liability claim against a hospital arising from a blood transfusion given to a patient in 1979 is governed by LSA-R.S. 9:5628. Despite the fact that this court has addressed the issue on three different occasions in the last eight years, we agree with OLOL that the issue deserves this court's attention once again.
Blood shield legislation/jurisprudence:
In 1968, the legislature enacted Louisiana's first blood shield statute.[3] Former *42 LSA-C.C. art. 1764 (now repealed) was amended by Act 301 of 1968, adding section B, as follows:
Notwithstanding the provisions of Section A.2. of this Article, the implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purposes of this Article be considered commodities subject to sale or barter but shall be considered as medical services.
This blood-shield statute withstood constitutional challenges in appellate courts of three circuits: Juneau v. Interstate Blood Bank, Inc. of Louisiana, 333 So.2d 354 (La.App. 3 Cir.), writ denied, 337 So.2d 220 (La.1976); Koppenol v. St. Tammany Parish Hospital, 341 So.2d 1242 (La.App. 1 Cir.), writ denied, 343 So.2d 1067 (La. 1977); and Adams v. New Orleans Blood Bank, Inc., 343 So.2d 363 (La.App. 4 Cir. 1977). The first circuit noted that by the late 1970's, 47 states had adopted similar statutes and in each instance where constitutionality was challenged the statute was upheld. See, Koppenol, 341 So.2d at 1245.
The plaintiffs also asserted claims of strict liability under Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971), which claims were rejected. See, Juneau, 333 So.2d at 358 (in enacting Article 1764(B) the legislature intended for the furnishing of blood to be considered a service for all purposes, not just for the warranty of fitness in a sale); accord, Adams, 343 So.2d at 364; see also, Koppenol, 341 So.2d at 1245, (the legislature considered and weighed the necessity and need for blood against the risk of contracting hepatitis and concluded the need outweighed the risk; the legislature saw fit in Article 1764(B) to exclude this type of injury from the application of warranty (express and implied) and from strict liability, as in RESTATEMENT (SECOND) OF TORTS § 402A (1965).).
Another attempt at recovering damages for tainted blood came in Martin v. Southern Baptist Hospital, 352 So.2d 351 (La. App. 4 Cir.1977), writ denied, 354 So.2d 210 (La.1978). Plaintiff acknowledged that the implied warranty of fitness was barred by LSA-C.C. art. 1764(B). Instead, plaintiff urged entitlement to a cause of action against the hospital for strict liability under LSA-C.C. art. 2317 and Loescher v. Parr, 324 So.2d 441 (La.1975). The court held that to permit the application of strict liability in these blood cases would instill in the medical profession fear of the use of blood until foolproof tests could be devised, an untenable result. The court cited with approval the provision in LSA-C.C. art. 1764(B) that blood is not a "commodity," but is a medical service, saying this "public policy statute" recognized the life-saving need for use of blood in some cases.
Meanwhile, in its 1975 regular session the Louisiana Legislature enacted a series of laws limiting the rights of medical malpractice claimants. The legislation included the Uniform Consent Law, LSA-R.S. 40:1299.40; the Medical Malpractice Act MMA), LSA-R.S. 40:1299.41 et seq.; the law strengthening the powers of the State Board of Medical Examiners, LSA-R.S. 37:1261 et seq.; and the prescriptive statute for actions for medical malpractice, LSA-R.S. 9:5628 (actions based upon tort, breach of contract or otherwise arising out of patient care shall be brought within one year from the date of the alleged malpractice or from the date of discovery, but no later than three years from the date of the alleged act).
*43 Although by 1981 the theory of strict liability had become established in Louisiana, the appellate courts had relied on the 1968 amendment to LSA-C.C. art. 1764 to reject that theory's application in blood cases.[4] Thus, DeBattista v. Argonaut-Southwest Insurance Company, 403 So.2d 26 (La.1981), was the first case to hold that a plaintiff seeking damages for being transfused in 1973 with blood tainted with hepatitis had a cause of action in strict liability. Justice Dennis, writing for the majority, concluded that blood contaminated with hepatitis virus is defective, i.e., unreasonably dangerous to normal use because the risks involved in receiving a transfusion of blood in this condition are greater than a reasonable consumer would expect. The majority cited LSA-C.C. arts. 2315-2324 and RESTATEMENT (SECOND) OF TORTS § 402A: DEFECTIVE CONDITION, but did not mention comment k of 402A. (See Note 8, infra.) Rejecting defendants' reliance on LSA-C.C. art. 1764(B)(1) to bar strict liability, Justice Dennis explained the liability of the distributor of blood was not one governed by the law of contractual warranties, but by the law of strict liability in tort. The majority interpreted Article 1764(B) as being limited to "that article" and thus, it should not have been read to include an "unspoken legislative intent to modify the strict tort liability of blood banks under Article 2315." Id. at 32.[5]
By Act 611 of 1981, a new civil code article designated as Article 2322.1, and by Act 331 of 1981, a new section designated as LSA-R.S. 9:2797 were enacted, providing that strict liability "shall not be applicable to physicians, hospitals ... or nonprofit community blood banks ... in the... transfusion ... of human blood ... which results in transmission of viral diseases... undetectable by appropriate medical and scientific laboratory tests." Both acts limited the effectiveness of the provisions to causes of action arising after the effective dates of the acts.
The Branch, Boutte, Williams decisions:
In 1994, Justice Dennis again wrote for the majority in Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211. First, the court rejected the argument that the blood shield statutes enacted after DeBattista barred a cause of action for hepatitis C contracted from blood "sold" in 1976. The court held Branch's cause of action vested prior to enactment of the blood shield statutes, and he and other pre 1981 consumers of defective blood could not be divested of their rights by subsequent legislation.
*44 The majority in Branch held the three-year prescription provision in LSA-R.S. 9:5628 did not apply to "strict tort liability actions arising out of the sale of blood in a defective condition unreasonably dangerous to the user or consumer." Branch, 92-3086 at 7, 636 So.2d at 214. Justice Dennis reasoned the earmarks of the statute indicated the legislature intended to deal only with actions traditionally classified under the generally prevailing meaning of "medical malpractice." Branch, 92-3086 at 8, 636 So.2d at 214. Thus, Branch's action against the providers of blood was not time barred.
Justice Lemmon dissented in Branch, reasoning that the sale of blood to a properly informed patient was not the sale of an unreasonably dangerous product. In his view, Branch's cause of action arose from lack of informed consent or from negligence of the hospital in handling the blood. Thus, the three-year limitation of LSA-R.S. 9:5628 should apply.[6]
Six years later, a unanimous court distinguished but did not overrule Branch. In Boutte, supra, a hepatitis C case, the court held that the MMA (LSA-R.S. 40:1299.41 et seq.) encompassed all legal theories of liability, including strict product liability, against a private hospital for damage arising from defects in blood received in 1981 and 1982. The MMA for private hospitals was enacted in La. Acts 1975, No. 817. At the time the transfusion in Branch was administered, the MMA contained no mention of blood products. The court's rationale was that Boutte differed because when that plaintiff's transfusions were administered, the MMA's definition of medical malpractice had been revised by La. Acts 1976, No. 183 to include "all legal responsibility of a health care provider arising from defects in blood." LSA-R.S. 40:1299.41(8). Therefore, it was unnecessary to overrule Branch in order to find Boutte's cause of action was barred by the three-year prescription applicable to medical malpractice cases. The court noted a possible constitutional problem because a separate statute was enacted in 1976 to cover malpractice liability for state services, La. Acts 1976, No. 66, but the legislation did not include the specific language about defective blood.[7] LSA-R.S. 40:1299.39(A)(4).
The third case in the trilogy was Williams v. Jackson Parish Hospital, 00-3170 (La.10/16/01), 798 So.2d 921. Although *45 the plaintiff had raised several constitutional challenges during the course of the prolonged litigation, the majority of four bypassed those issues and decided the case on the basis of an interpretation of LSA-R.S. 9:5628 not linked to the definition of malpractice in the MMA. The court stated:
The application of § 5628 does not depend on whether the defendant is a qualified health care provider under the MMA, or on whether the claim alleged in the plaintiff's complaint is "malpractice" as defined under that Act. What the application of § 5628 depends on is whether the two restrictions the Legislature set forth in that special prescription statute are met; namely: (i) the defendant must fall within one of the categories of enumerated providers; and (ii) the claim asserted must meet the statutory, conduct-based standard, i.e., the action, whether in tort, in breach of contract, or otherwise, must arise out of patient care. In this case, the first restriction is met because [Jackson Parish Hospital] is a state licensed hospital, but the second restriction is not satisfied.
Williams, XXXX-XXXX at 12, 798 So.2d at 930.
The divided court concluded that Branch correctly held all pre-1982 (preblood shield statutes) claims against hospitals in strict products liability arising out of defective blood transfusions (DeBattista claims) are not traditional medical malpractice claims and are not governed by LSA-R.S. 9:5628, but by LSA-C.C. art. 3492. Williams, XXXX-XXXX at 15-16, 798 So.2d at 932.
Justice Victory dissented on the basis that a writ was granted in Williams to determine a constitutional challenge, with the overruling of Boutte not even suggested. He explained DeBattista held a distributor of blood was strictly liable in tort, and LSA-R.S. 9:5628 states it applies to actions "based on tort, or breach of contract, or otherwise, arising out of patient care." Thus, the analysis need go no further than the plain language of the statute. Further, Justice Victory was of the opinion that Branch was in error, but it was unnecessary to overrule that case in Boutte because of the amendment to the MMA.
Justice Knoll dissented for the reasons espoused in Boutte, also finding the overruling of that recent case ill advised. Most importantly, she pointed out that the transfusion of blood is an integral part of the physician's care of the patient and the "sale" of blood cannot be dissected reasonably from treatment. Justice Knoll was of the opinion that the court strayed from a proper interpretation of LSA-R.S. 9:5628 in Branch in stating that the statute did not reference a strict liability claim. The plain language, "tort ... arising out of patient care," makes the article applicable to actions based on strict liability for blood sold and used in transfusions. Patients do not buy and sell blood as pure commercial transactions; blood transfusions are an integral part of patient care.
Justice Traylor dissented for reasons assigned by Justices Victory and Knoll.
Language of LSA-R.S. 9:5628:
As stated at the beginning of this opinion, the issue in this case is whether an individual who contracted hepatitis C from a blood transfusion administered by a hospital in 1979 can bring an action for damages 20 years later if the hospital is held strictly liable for providing contaminated blood. We resolve this issue in favor of the hospital by an analysis of the clear and unambiguous language of LSA-R.S. *46 9:5628.[8]
"Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. If that be plain, it is the duty of the courts to enforce the law as written, provided it be within the constitutional authority of the legislative body which passed it." United States v. Standard Brewery, Inc., 251 U.S. 210, 217, 40 S.Ct. 139, 140, 64 L.Ed. 229 (1920). Thus, interpretation of any statute begins with the language of the statute itself. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX, p. 12 (La.6/29/01), 808 So.2d 294, 302. When the wording of any of Louisiana's revised statutes is clear and unambiguous, "the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4. If application of a clear and unambiguous statute does not lead to absurd results, the law shall be applied as written; no further interpretation may be made in search of the intent of the legislature. Cleco Evangeline, LLC v. Louisiana Tax Commission, 2001-2162, p. 5 (La.4/3/02), 813 So.2d 351, 354. "Words and phrases ... shall be construed according to the common and approved usage of the language." LSA-R.S. 1:3. The proper connotation to be placed on a word in a statute does not depend on an isolated definition attributable to it; instead, the word and the context in which it is used shall be considered. Liter v. City of Baton *47 Rouge, 258 La. 175, 190, 245 So.2d 398, 403 (1971). Words and phrases "that may have acquired a peculiar and appropriate meaning in the law" shall be construed and understood according to that meaning. LSA-R.S. 1:3. Laws of limitation, which are in derogation of the general rights of tort victims, are to be strictly construed if there are any ambiguities in the law. Ruiz v. Oniate, 97-2412, p. 4 (La.5/19/98), 713 So.2d 442, 444. However, the rule of strict construction applies only when the plain language of the statute and the rules of interpretation fail to illuminate definitively the legislature's intent. Ruiz, 97-2412 at 5, 713 So.2d at 444-445. Statutes providing for prescriptive periods are to be strictly construed in favor of maintaining a cause of action. Lima v. Schmidt, 595 So.2d 624, 629 (La.1992). However, the clear words of the statute cannot be disregarded for the purpose of maintaining the action. See, Ruiz, 97-2412 at 5, 713 So.2d at 444-445.
On the dates of the blood transfusions in the instant case (1979), as well as in Branch (1976), Boutte (1981-1982), and Williams (1980), LSA-R.S. 9:5628 provided, in pertinent part:
A. No action for damages for injury or death against any ... hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. [Emphasis added.]
Louisiana Revised Statute 9:5628 begins with the words "[n]o action for damages for injury." (Emphasis added.) "No action" is clear, unambiguous, explicit, unequivocal, and dispositive. The parenthetical phrase which follows merely illustrates the types of actions which cannot be brought, including those sounding in tort and those sounding in contract. However, the statute then broadens the illustrative types of actions infinitely when it states "or otherwise." Thus, not only those actions sounding in tort or contract, but actions sounding "otherwise" are barred if the action arises out of patient care. The word "otherwise" indisputably includes strict liability for a defective product. Products liability, which involves the sale of a product that causes an injury, emerged from the crossroads of tort and contract. In sum, no action, whether sounding in tort or contract or otherwise, can be brought after the prescriptive period if the action arises from patient care. As Justice Victory stated in his dissent in Williams, "We need go no further than the plain language of La. R.S. 9:5826." Williams, XXXX-XXXX at 2, 798 So.2d at 933, Victory, J., dissenting.
We agree with OLOL's argument that the phrase "whether based upon tort, or breach of contract or otherwise" in LSA-R.S. 9:5628 includes strict liability claims. The statute contains no qualifying or limiting language that would negate its application to a strict liability action brought against a hospital for an act arising out of patient care. The words "or otherwise" are all inclusive of actions regardless of the factual bases involved or the legal theories asserted. Further, applying the prescriptive period of LSA-R.S. 9:5628 to strict liability actions arising out of patient care is consistent with the legislative policy for which the statute was enacted, specifically, to avoid medical malpractice *48 insurance crises. See Crier v. Whitecloud, 496 So.2d 305, 308-309 (La. 1986).
Dissenting in Williams, Justice Knoll found the majority strayed far from the applicable language of LSA-R.S. 9:5628. Finding the sale of defective blood falls within the legal category of medical malpractice, she explained:
The strict liability claim for the sale of defective blood cannot be viewed in a vacuum as a simple sale. The transfusion of blood is an integral part of the physician's or hospital's treatment of the patient in certain medical circumstancesone in which the sale of blood cannot reasonably be dissected from treatment. Therefore, the strict liability for the sale of defective blood should be considered medical malpractice for purposes of LA.REV. STAT. ANN. § 9:5628 as construed in Branch.

....
The language "tort ... arising out of patient care" clearly encompasses delictual actions based on strict liability for blood sold and used in transfusions. It is clear and well-established that strict liability is a legal theory which may form the basis of a tort action and, as such, is simply a subspecies of the fault recognized in LA. CIV.CODE ANN. art. 2315. WILLIAM CRAWFORD, 12 LOUISIANA CIVIL LAW TREATISE §§ 2.1, 2.5 (West Group 2000). Patients do not buy and sell blood as a pure commercial transaction; rather, blood is bought and used as an integral part of the care afforded patients at the time of medical treatment. Thus, although a transfusion of contaminated blood involves a defective product, the blood is inextricably tied to the patient's care under LA.REV.STAT. ANN. § 9:5628. I find that the sale and transfusion of blood arise out of patient care and the word "tort" utilized therein encompasses the action in strict liability. Therefore, I find that LA.REV.STAT. ANN. § 9:5628 applies to the plaintiff's claim and [the claim] is perempted.
The Legislature's selection of the word "tort" and the statute's directive [in the second paragraph] that it be applied to "all persons whether or not infirm or under disability of any kind and including minors and interdicts," evidence that LA.REV.STAT. ANN. 9:5628 is a far-reaching statute. However harsh the application of LA.REV.STAT. ANN. § 9:5628, mincing words and linguistic gymnastics should not be utilized to disregard the statutory language. Rather, litigants should seek redress from the Legislature to change the law.
Williams, XXXX-XXXX at 2-4, 798 So.2d at 935-936, Knoll, J., dissenting.
Justice Knoll's analysis of the term "arising out of patient care" is consistent with the general principles of statutory construction and does not lead to absurd results.
As conceded by the majority in Williams, the application of LSA-R.S. 9:5628 to a plaintiff's claim does not depend upon whether the hospital is a private hospital qualified under the MMA, a private hospital not qualified under the MMA, or a public facility. The statute states its prescriptive periods apply to claims brought against "any ... hospital." This language is as all inclusive as the statute's provision that "[n]o action" brought against "any ... hospital" can escape the time limitations enacted by the legislature in 1975.
The majority of four in Williams, no doubt in good faith convinced of the correctness of their views, overruled Boutte, for five reasons: 1) Boutte broadly construed and extended by construction the scope of LSA-R.S. 9:5628 by referencing *49 the MMA's expanded definition of malpractice; 2) by referencing the MMA's definition, Boutte erred in determining the scope of "patient care" under LSA-R.S. 9:5628; 3) Boutte ignored the legislature's placement of LSA-R.S. 9:5628 outside the MMA; 4) because Boutte was decided pursuant to the MMA, the holding is applicable only to private hospitals, leaving open a constitutional problem with the differences in the legislation for public institutions; and 5) Boutte ignores the legislative history of LSA-R.S. 9:5628.
However, the concerns voiced in Williams and used as a basis for overruling Boutte are alleviated when one acknowledges and gives effect to the clear and unambiguous language of the statute. The references in Boutte to the MMA are immaterial and do not extend by construction the scope of LSA-R.S. 9:5628 because the language of the statute is intrinsically broad. Boutte's referencing the MMA's expanded definition of malpractice is unnecessary in light of the statute's command that "[n]o action" can be brought unless it is within three years of the alleged act or omission, "whether based upon tort, or breach of contract, or otherwise, arising out of patient care." Likewise, as pointed out in Justice Knoll's dissent in Williams, one need look no further than LSA-R.S. 9:5628 to conclude that the act of transfusing a patient with blood is an act "arising out of patient care." The placement of LSA-R.S. 9:5628 in Title 9 instead of in the MMA indicates a legislative intent that the statute's provisions apply to claims against "any ... hospital," not just hospitals qualified under the MMA. Thus, the potential constitutional challenge perceived in Boutte and noted in Williams is averted by the statute's application to private and public hospitals.
Finally, although the majority in Williams states Boutte ignores the legislative history of LSA-R.S. 9:5628, we find that criticism unwarranted. We have thoroughly re-examined the analysis of that statute by Justice Marcus, writing for a unanimous court, and we do not find it wanting.[9]
Accordingly, we hold plaintiff's claim of strict liability in tort for the transfusing of blood contaminated with hepatitis C filed against the private hospital, which was not a qualified health care provider at the time of the blood transfusion, is prescribed pursuant to the provisions of LSA-R.S. 9:5628. All previous holdings inconsistent with this holding are hereby overruled.
Constitutional issues:
In his brief to this court David argues that if this court finds his claim is time-barred pursuant to LSA-R.S. 9:5628, he should be given the opportunity to amend his pleadings to assert that statute's *50 unconstitutionality as it applies to him.
All laws are presumed to be constitutional until the contrary is made to appear. As a general rule a litigant cannot raise the unconstitutionality of a statute unless its unconstitutionality is specially pleaded and the grounds particularized. As a corollary of this rule, a litigant who fails to plead the unconstitutionality of a statute in the trial court cannot raise the constitutional issue in the appellate court. Johnson v. Welsh, 334 So.2d 395, 396-397 (La.1976) (constitutionality of statute not attacked by trial court pleadings prevents court of appeal from passing on the issue; the question of constitutionality was not before the court of appeal or before the supreme court).
David's request to this court that the case be remanded to allow him to urge the unconstitutionality of LSA-R.S. 9:5628 does not satisfy any of the general rules noted above. The unconstitutionality of the statute has not been "specially pleaded" in any court, nor have the grounds for the constitutional challenge been particularized. But see, Liner v. Daughters of Charity of St. Vincent DePaul, Inc., XXXX-XXXX (La.5/26/00), 762 So.2d 628 (remand ordered to allow pleading of unconstitutionality despite fourth circuit's ruling, at 99-1065, p. 4, 753 So.2d 336, 338, that issue was not properly pleaded in trial court). David merely requests we grant him an opportunity to assert the grounds for his constitutional challenge as we did for the plaintiff in Liner and in Boutte, 99-2402 at 8-9, 759 So.2d at 51.
Countering David's request, OLOL points out that this court's action in Boutte is inappropriate in the instant case because Boutte's action against Hotel Dieu had not proceeded to trial when this court sustained the exception of prescription. In the instant case, David's claim against OLOL has been tried on the merits and is now pending on appeal to the first circuit. Thus, there is no petition remaining in the trial court to be amended pursuant to LSA-C.C.P. art. 934[10], and, absent a remand of the exception of prescription, jurisdiction is no longer vested in the trial court.
Nevertheless, equity suggests that since the jurisprudence addressing the applicability of LSA-R.S. 9:5628 to a cause of action such as David's has been in a state of flux, remand is proper under the extraordinary circumstances encountered during this prolonged litigation.[11] Further, *51 this court has left open the issue of the constitutionality of LSA-R.S. 9:5628 as it applies to bar an action by a person suffering from a disease with a latency period in excess of three years. See Whitnell v. Silverman, 95-0112, p. 9 n. 13 (La.12/06/96), 686 So.2d 23, 29 n. 13.[12] Pursuant to LSA-C.C.P. art. 2164, which permits appellate courts to remand cases when the interest of justice is served, we sustain OLOL's exception of prescription, but remand this matter to the trial court to allow David an opportunity to file an amended petition urging the constitutional challenge.

DECREE
The judgments of the district court and the Court of Appeal, First Circuit, overruling the peremptory exception of prescription filed by Our Lady of the Lake Hospital, Inc. are reversed, and the exception is sustained. In lieu of dismissal of Rocky Wayne David's claim, the case is remanded to the trial court to allow plaintiff fifteen days from the finality of this opinion to file an amended petition pleading the unconstitutionality of the statute at issue. In default of such amendment, plaintiff's suit is dismissed. If the plaintiff elects to amend, the district court shall conduct proceedings according to law and consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
CALOGERO, C.J., and JOHNSON, J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissents and assigns reasons.
In DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981), we held that hospitals (as opposed to blood banks) could be strictly liable for defective blood transfusions. In recognizing the health care providers' exposure to strict products liability claims arising out of defective blood transfusions, we reasoned that "[a] distributor of blood is strictly liable in tort when blood he places on the market creates an unreasonable risk of harm to others and, in fact, results in injury or disease to a human being." 403 So.2d at 32. Later, in Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988), we recognized a hospital's strict liability arising out of the sale of defective blood, stating that "[t]he responsibility of a professional vendor or distributor is the same as that of a manufacturer." 520 So.2d at 391.
In Branch v. Willis-Knighton Med. Ctr., 92-3086 (La.4/28/94), 636 So.2d 211, we addressed the nature of a DeBattista claim against a hospital in terms of determining the applicable prescriptive period: whether such a claim would be controlled by the general tort prescriptive period in La. Civ. Code art. 3492 or the special medical malpractice prescriptive period in La.Rev.Stat. 9:5628. We concluded in Branch that such claims are not malpractice claims governed by § 9:5628, because the language in that special prescriptive statute neither "mention[s] strict liability or products liability," nor "contain[s] the terms and concepts *52 indispensable to the definition, classification and administration of strict tort products liability actions." 92-3086 at pp. 13-14, 636 So.2d at 217. Therefore, in Branch we held that a plaintiff's strict products liability action against a hospital arising out of defective transfused blood was governed by the general tort prescriptive period of Article 3492 rather than the special prescriptive period in § 9:5628. We found § 9:5628 inapplicable based on the nature of the plaintiff's actiona strict products liability claim arising out of the sale of defective blood"[d]espite the close relationship between `patient care' and the provision of blood to a patient." Davis v. Parker, 58 F.3d 183, 188 (5th Cir.1995). The Branch court rejected the court of appeal's broad construction of § 9:5628 reasoning that "there is no evidence that the legislature intended by R.S. 9:5628 to curb any type of litigation other than traditional malpractice actions" and, "because the statute grants immunities or advantages to a special class in derogation of the general rights available to tort victims, it must be strictly construed against limiting the tort claimants' rights against the wrongdoer." Branch, 92-3086 at pp. 9, 14, 636 So.2d at 215, 217.
Notwithstanding the Branch court's specific rejection of a broad construction of § 9:5628, the court in Boutte v. Jefferson Parish Hosp. Serv. Dist. No. 1, 99-2402 (La.4/11/00), 759 So.2d 45, took just such an approach. In Boutte, the court reversed an appellate decision that followed Branch and held that "plaintiffs' claim [for damages arising out of the transfusion of defective blood] is in the nature of a medical malpractice claim, regardless of the underlying legal theory (strict liability) used to support the claim." Boutte, 99-2402 at p. 4, 759 So.2d at 48. The expressed basis for not following Branch was the 1976 amendment to the MMA's definition of "malpractice" which added liability for defective blood within the Act's scope. Boutte construed the effects of that amendment as not only expanding the scope of the MMA, but also expanding the scope of § 9:5628 to include DeBattista claims.
In Williams v. Jackson Parish Hosp., 00-3170 (La.10/16/01), 798 So.2d 921, we determined that Boutte had been wrongly decided. We reasoned in Williams that the application of the La.Rev.Stat. 9:5628 should not rest either on whether the defendant is a qualified health care provider under the MMA or on whether the claim alleged in the complaint is "medical malpractice" as defined in the MMA. Williams held that the application of § 9:5628 instead depends on whether the two restrictions set forth in this special prescription statute are met: (1) the defendant must fall within one of the categories of enumerated providers, and (2) the claim asserted must meet the statutory, conduct-based standard, i.e., the action, whether in tort, in breach of contract, or otherwise, must arise out of patient care. Williams, p. 12, 798 So.2d at 930.
In considering the second requirement, the majority in Williams disapproved of Boutte`s linking of the MMA's definition of medical malpractice to the requirement in § 9:5628 that the action arise out of "patient care," id., and cited a number of reasons why the Boutte court had unwisely strayed from following the approach set forth in Branch: First, the Boutte court was wrong to ignore the principle that prescriptive statutes are to be strictly construed in favor of maintaining the plaintiff's action, such that, absent clear legislative intent, prescriptive statutes having more than one reasonable interpretation should be construed against the party claiming prescription. Second, the Boutte court ignored the placement of § 9:5628 outside both medical malpractice acts, the *53 MMA and the MLSSA, and thus ignored the conduct-based standard that should govern the scope of its application. Third, the Boutte court failed to limit the expanded scope of medical malpractice to the MMA, where it was contained, and whose special protections would apply. Fourth, the Boutte court, by relying exclusively on the definition of medical malpractice in the MMA covering private health care providers, ignored the constitutional implications arising from the subsequent removal of a similar definition from the MLSSA covering public health care providers. Finally, the Boutte court ignored the legislative history of § 9:5628, in that, despite the clear holdings of Branch in 1994 and DeBattista in 1981, the legislature had never amended the scope of 9:5628, and only recently enacted (1999) La.Rev.Stat. 9:5628.1 to cover strict liability claims arising out of defective blood. The effect of Williams, however, was fairly limited, since the legislature had already enacted La.Rev.Stat. 9:5628.1 to address the issue of prescription for a cause of action for defective blood.
Notwithstanding what appeared to be settled law and jurisprudence, a new majority today in one fell swoop specifically overturns Williams v. Jackson Parish Hosp., implicitly disapproves of Branch v. Willis-Knighton Med. Ctr., indirectly questions DeBattista v. Argonaut-Southwest Ins. Co., and reinstates the holding in Boutte v. Jefferson Parish Hosp. Serv. Dist. No. 1. The majority today does so even while recognizing that Boutte incorrectly relied on the definition of medical malpractice provided in the Medical Malpractice Act to determine the scope of La.Rev.Stat. 9:5628 and define an "action... whether based upon tort, breach of contract or otherwise, arising out of patient care" as a medical malpractice claim to which La.Rev.Stat. 9:5628 is directed. The new majority goes even farther than asked and effectively decides the constitutional equal-protection and due process claims in favor of the defendant hospital that were never even considered in Williams, see Williams, p. 4 n. 8, 798 So.2d at 925 n. 8, and which have not yet been raised by the plaintiff in the instant case. Thus, a new majority scores quite an upset in regard to settled jurisprudence.
I see no reason, other than a court reconfigured in part and excluding one of the justices who was in the majority in Williams because recused in this case, for choosing to reconsider the reasons espoused in Williams, to which I continue to adhere. Like the majority in Williams, the majority today recognizes that the application of the La.Rev.Stat. 9:5628 does not rest either on whether the defendant is a qualified health care provider under the MMA or on whether the claim alleged in the complaint is "medical malpractice" as defined in the MMA. Recall that, as Williams held, the application of 9:5628 depends on whether the two restrictions set forth in this special prescription statute are met: (1) the defendant must fall within one of the categories of enumerated providers, and (2) the claim asserted must meet the statutory, conduct-based standard, i.e., the action, whether in tort, in breach of contract, or otherwise, must arise out of patient care. Williams, p. 12, 798 So.2d at 930. It is this second requirement which is the focus of the current dispute.
In considering the second requirement, the majority in Williams disapproved of Boutte`s linking of the MMA's definition of medical malpractice to the requirement in La.Rev.Stat. 9:5628 that the action arise out of "patient care." Id. The majority today ostensibly agrees that Boutte should not have referenced the MMA definition of malpractice to determine the scope of *54 9:5628, ante p. 49, but then it proceeds to apply to the meaning of the words, "arising out of patient care," a construction advanced by the dissent in Williams, to find that the prescription statute has an "infinitely" broader scope than perhaps even the court in Boutte envisioned. Ante, p. 47. I disagree with the majority's new approach to the second requirement and believe that it, too, is wrong for reasons similar to those expressed in the Williams critique of Boutte.
First, like the Boutte court, the new majority today ignores the principle that prescriptive statutes are to be strictly construed in favor of maintaining the plaintiff's action, such that, absent clear legislative intent, prescriptive statutes having more than one reasonable interpretation should be construed against the party claiming prescription. In my view, the prescription statute under review here, La. Rev.Stat. 9:5628, presents an ambiguity between its language, "whether based upon tort, breach of contract or otherwise, arising out of patient care," and its preamble referencing "medical malpractice claims," when viewed in light of the clear holdings in Branch and DeBattista that the sale of defective blood is not a traditional medical malpractice claim. The majority errs both in failing to recognize the existence of an ambiguity and in failing to apply the principle governing the construction of ambiguous statutes so as to maintain this plaintiff's cause of action.
Second, while the Boutte court erred in linking the definition of medical malpractice found in the MMA to the scope of La.Rev.Stat. 9:5628, despite its placement outside the MMA, the new majority today acknowledges the distinctive location where the statute is placed, but rather than construe the statute conservatively, the majority extrapolates the "intrinsically broad" scope of the prescriptive statute, ante, p. 49, to cover, presumably, any act by any duly licensed hospital so long as it arises out of patient care. In so doing, the majority effectively defines a medical malpractice claim more broadly than even the legislature did in both medical malpractice acts, the MMA and the MLSSA. The majority today essentially holds that 9:5628 has no apparent limitation in scope other than that the action, whether based on tort, breach of contract or otherwise, must arise out of "patient care."
Third, as the Williams majority noted, the Boutte court, by relying exclusively on the definition of medical malpractice found in the MMA, which covers private health care providers, ignored the constitutional implications arising from the subsequent removal of a similarly-worded definition from the MLSSA, which covers public health care providers. Though not asked to do so, the majority today avoids the constitutional problem presented by the reasoning in Boutte by finding that La. Rev.Stat. 9:5628 is "infinitely" broad in scope, ante, p. 47, and applies to "any ... hospital," private or public, qualified or not.
Finally, like the Boutte court did, the majority today ignores the legislative history of La.Rev.Stat. 9:5628, in that, despite the clear holdings of Branch in 1994 and DeBattista in 1981, the legislature has never amended the scope of 9:5628, and only recently enacted La.Rev.Stat. 9:5628.1, in 1999, to cover strict liability claims arising out of defective blood transfusions. Adopting the Boutte reasoning, ante, p. 46 and n. 8, the majority focuses on the reference in the preamble of La. Rev.Stat. 9:5628 to "medical malpractice claims" and again refers back to the MMA and its definition of medical malpractice passed contemporaneously with La.Rev. Stat. 9:5628. However, the majority today, as did the Boutte court, ignores the *55 settled jurisprudence of this court, which held that DeBattista claims are not traditional medical malpractice claims, such that the reference in 9:5628's preamble to medical malpractice claims at the least creates an ambiguity that should be resolved in favor of maintaining under La. Civ.Code art. 3492 the plaintiff's action in strict liability for the sale of defective blood.
The Williams majority in my view had the correct, conduct-based approach to applying the second requirement of La.Rev. Stat. 9:5628. A DeBattista claim is not an action arising from patient care; instead, it is a strict products liability claim arising from the sale of a defective product, blood. Because the DeBattista claim is not a traditional medical malpractice claim, it is not the type of claim "based upon tort, breach of contract or otherwise, arising out of patient care" to which the prescriptive periods of La.Rev.Stat. 9:5628 are directed. Instead, such claims, to the extent that they are not now covered by La.Rev. Stat. 9:5628.1, should be governed by the general tort prescriptive periods found in La. Civ.Code art. 3492. Accordingly, in my view, the Williams court correctly overruled Boutte, and today's majority errs in overruling Williams.
For these reasons, I respectfully dissent from the majority's decision today overruling Williams, reinstating Boutte, and reversing the district court's ruling denying the defendant's peremptory exception of prescription, as well as the decision's consequence, which is to take away this plaintiff's judgment of over $2 million in damages.[1]
JOHNSON, J., dissenting.
We have consistently held that the limiting provisions of the Medical Malpractice Act are to be strictly construed as they are in derogation of the rights of tort victims. Spradlin v. Acadia-St. Landry Med. Found., 98-1977 (La.2/29/00), 758 So.2d 116; Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992). The principal purpose of the Act is to limit the liability of health care providers who qualify under the Act by maintaining specified basic malpractice insurance and by contributing a surcharge to the Patients Compensation Fund. Taylor v. Clement, 02-561 (La.App. 3 Cir. 12/4/02), 832 So.2d 1089. As long as the health care provider remains qualified under the Act, the health care provider and its insurer are liable for malpractice only to the extent provided in the Act. Id.
In Bouttte v. Jefferson Parish Hosp. Ser., 99-2402 (La.4/11/00), 759 So.2d 45, this Court recognized that La. R.S. 9:5628[1] applies strictly to medical malpractice cases. It has been held that a non-qualified health care provider cannot avail itself of the primary benefits of paying into the PFC, i.e. cap on damages and initial submission of claims to the medical review panel. Hardy v. Blood Systems, Inc., 01-0134, 794 So.2d 13 (La.App. 3 Cir.2001). It seems logical that a nonqualified *56 health care provider should, likewise, not be allowed to avail itself of the prescriptive period of La. R.S. 9:5628.
In the instant case, Our Lady of the Lake Hospital was not a "qualified health care provider" at the time of plaintiff's blood transfusion under either the private or public Medical Malpractice Acts. It did not pay any premiums on a policy of insurance under either Act. Therefore, the general rules of tort law, including prescription, should apply. Accordingly, Our Lady of the Lake Hospital should not be allowed to avail itself of the prescriptive period provided for in La. R.S. 9:5628.
NOTES
[*] Retired Judge Moon Landrieu, assigned as Justice ad hoc, sitting in place of Justice Catherine D. Kimball, recused.
[1] The three-year limitation is prescriptive, not peremptive. Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 724 (La.1986), reaff'd in State Board of Ethics v. Ourso, XXXX-XXXX, p. 4 (La.4/9/03), 842 So.2d 346, 349.
[2] During the time OLOL's writ application was pending in the court of appeal, a bench trial on the merits was conducted. The trial court rendered judgment for plaintiff on July 15, 2002, awarding over two million dollars in damages. Thereafter, OLOL perfected a timely suspensive appeal and filed its brief with the appellate court.
[3] The statutes are called "blood shield statutes" because the providers of blood are shielded from liability.
[4] See Faucheaux v. Alton Ochsner Medical Foundation Hospital and Clinic, 468 So.2d 720, 721 (La.App. 5 Cir.), rev'd on other grounds, 470 So.2d 878 (La.1985).
[5] But see William J. Sharp, Note, DeBattista v. Argonaut Southwest Ins. Co.: The Meaning of "Unreasonable Danger" in Louisiana Products Liability, 42 La. L.Rev. 1453, 1459 n. 26, wherein the Sharp states the appellate courts seemed to espouse the preferable theory and elaborates:

The legislative amendment of article 1764 classifying blood as a service and removing the actions based on implied warranties of merchantability and fitness was passed in 1968, before Weber and strict liability for products were part of Louisiana law. That amendment appears to have been an attempt to negate all causes of action that could arise concerning contaminated blood except the action in negligence. It is not an unreasonable interpretation of legislative intent for the appellate courts to assume that if strict liability had been available in 1968, the same policy reasons which compelled the legislature to remove all actions but negligence also would have led to the elimination of the strict liability action for blood.
The same point was made by the dissent in DeBattista, and again by the dissent in Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211.
[6] In 1999, the Louisiana Legislature again addressed the issue of prescription of a cause of action for defective blood, enacting LSA-R.S. 9:5628.1, which now provides in pertinent part:

A. No action for damages against any healthcare provider as defined in this Section, whether based on negligence, products liability, strict liability, tort, breach of contract, or otherwise, arising out of the use of blood or tissue ... shall be brought unless filed ... within one year from the date of the alleged cause of action or other act, omission, or neglect, or within one year from the date that the alleged cause of action or other act, omission, or neglect is discovered ...; however, except as provided in Subsection B, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the act, omission, or neglect.
The "Subsection B" referenced in LSA-R.S. 9:5628.1(A) provides that the statute is remedial and without regard to the date when the alleged cause of action or other act, omission, or neglect occurred. However, Subsection B grandfathers in causes of action occurring prior to July 1, 1997, but provides that as to those actions, suit must be filed by July 1, 2000. Further, the provisions of the new legislation did not apply to legal proceedings filed prior to the effective date of the LSA-R.S. 9:5628.1, June 30, 1999.
[7] See discussion infra explaining how that constitutional issue is resolved by a correct reading of LSA-R.S. 9:5628 without reference to the MMA.
[8] We pretermit until another time the issue of whether health care providers who administered blood contaminated with hepatitis C prior to 1975 can be held strictly liable to an injured patient. In Seal v. St. Tammany Parish Hospital Service District No. 1, XXXX-XXXX (La.6/30/00), 765 So.2d 1057, this court reversed "for the reason assigned by [then] Judge Weimer in his dissenting opinion." That dissenting opinion stated the defendants were entitled to present a defense relative to whether a blood transfusion, given in 1973, which was alleged to be the cause of plaintiff's hepatitis C, was "unavoidably unsafe" pursuant to RESTATEMENT (SECOND) OF TORTS § 402A cmt k (1965). This defense minimizes the differences between actions in strict liability and actions in negligence. The dissent further noted:

In DeBattista, the defendants contended that the danger presented by the blood was reasonable because the screening test used to detect Hepatitis B, a known contaminant, was not one hundred (100%) percent effective, and that this relatively small percentage of unwholesome blood which the test could not detect was not unreasonably dangerous in comparison to the larger amount of blood which had properly been screened given the social utility of blood. DeBattista, 403 So.2d at 30. This is a different argument than is being presented by defendants in the instant case, i.e., that blood is unavoidably unsafe, and thus not unreasonably dangerous, when it is contaminated by an unknown and undiscovered virus for which a screening test did not exist at the time of the transfusion. That the defendants' arguments in DeBattista were rejected should not be interpreted to foreclose all arguments in which the risk presented by blood is contended to be reasonable.
Seal v. St. Tammany Parish Hospital Service District No. 1, 99-2914, (La.App. 1 Cir. 1/27/00), reh'g denied, (La.App. 1 Cir. 4/27/00), 848 So.2d 1.
See Chauvin v. Sisters of Mercy Health System, St. Louis, Inc., XXXX-XXXX (La.App. 4 Cir. 5/8/02), 818 So.2d 833, wherein the appellate court followed Seal in holding that in 1963 the presence of hepatitis C in the plaintiff's transfusion was an "unavoidably unsafe" condition for which the defendant hospital could not be held strictly liable.
Although the facts in DeBattista made it unnecessary to discuss comment k, DeBattista relied heavily on the RESTATEMENT (SECOND) OF TORTS § 402A. However, the current nationwide development of the law on this issue makes such reliance questionable. The RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY (1998) declares in section 19C that "human blood and human tissue, even when provided commercially, are not subject to the rules of this Restatement." See George W. Conk, Is There a Design Defect in the Restatement (Third) of Torts: Products Liability?, 109 Yale L.J. 1087, 1104 (2000).
[9] Justice Marcus succinctly stated:

While the word "malpractice" is not found within the text of the Act, we have held on numerous occasions that La. R.S. 9:5628 is a special provision designed to cover medical malpractice claims. It was enacted in 1975 in the same session of the legislature that enacted the Medical Malpractice Act. The preamble to La. R.S. 9:5628 as originally enacted stipulates that it was added to provide for a maximum prescriptive period and abandonment with respect to "medical malpractice claims." The statute has been amended from time to time to expand the class of defendants and claimants governed by the limitation periods. Preambles to amendments have continued to recite that the prescriptive period is relative to actions for "medical malpractice." It is clear that La. R.S. 9:5628 was intended by the legislature to govern "medical malpractice claims." The title and preamble to La. R.S. 9:5628 may properly be consulted to confirm that intent. [Citations and footnotes omitted.]
Boutte, 99-2402 at 5, 759 So.2d at 48.
[10] Article 934 provides:

When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
[11] When David filed his action in February 1999, the controlling jurisprudence was Branch, 92-3086, 636 So.2d 211, wherein this court held the three-year prescription provision of LSA-R.S. 9:5628 did not apply to strict tort liability actions arising out of the sale of blood in a defective condition unreasonably dangerous to the user or consumer. Thus, OLOL's exception of prescription was denied in the trial court. However, by the time the first circuit considered the issue, Boutte, 99-2402, 759 So.2d 45, had been decided, which caused the first circuit to reverse the trial court's denial. This court granted David's writ application, in which he requested, in the alternative to reversal of the first circuit's decision, that the case be remanded to allow him to amend his pleading and raise the issue of the unconstitutionality of LSA-R.S. 9:5628. Instead of considering the correctness of the first circuit ruling, this court remanded the matter to the court of appeal for an opinion. David v. Our Lady of the Lake Hospital, Inc., XXXX-XXXX (La.5/11/01), 792 So.2d 3. Before the appellate court could render an opinion, Williams, 00-3170, 798 So.2d 921, was decided. Thus, when David filed to set this matter for trial on the merits and opposed OLOL's motion for continuance on the grounds the exception of prescription was pending in the appellate court, there was no need for David to attack the constitutionality of LSA-R.S. 9:5628.
[12] The combination of factors encountered in the instant case distinguishes it from Mosing v. Domas, XXXX-XXXX, pp. 13-14 (La.10/15/02), 830 So.2d 967, in which we disallowed a belated constitutional due process argument. In Mosing, the defendant, while not required to appeal because the trial court judgment was entirely in its favor, nevertheless filed on appeal, raising several arguments, but omitting the constitutional plea.
[1] The remand to allow the plaintiff the opportunity to amend his petition to assert a claim challenging the constitutionally of La.Rev. Stat. 9:5628 is the sole remaining issue.
[1] La. R.S. 9:5628 provided:

No action for damages for injury or death against any ... hospital ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of the discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.