Dear Judge Smith and Ms. Akers:
Your requests for an Attorney General's Opinion have been assigned to me for research and reply. You have asked for an opinion regarding the applicability of La.R.S. 11:1939 and La.R.S. 11:158 in a situation where an employer failed to make full contributions to the Parochial Employees' Retirement System (PERS) on behalf of an employee, who was enrolled as a member at that time, due to an administrative error.
You indicated that it recently came to the attention of the Third Judicial District Court (Court) that two of its employees who are enrolled in PERS were having contributions to the retirement plan withheld, but that some of their salary was inadvertently and unintentionally not reported. Thus, contributions on the unreported portion of their salary were not forwarded to PERS.
PERS maintains that the Court must pay an amount which, on an actuarial basis, totally offsets the increase in accrued liability of the system resulting from the receipt of the credit by the member; however, the Court maintains that it only owes the amount of unpaid contributions plus interest. *Page 2 
As an initial matter, we note that there are two types of contributions that are required to be paid to PERS. The first is the employee contribution paid pursuant to La.R.S. 11:62(8). Under La.R.S. 11:2014, employers are required to deduct the amount of such contribution from earnings as and when paid and submit such amount to PERS. The second type of deduction is the employer contribution paid pursuant to La.R.S. 11:103.
We first address your question regarding the applicability of La.R.S.11:1939, which provides the following:
 Any person whose membership in the system was a mandatory condition of employment but was not enrolled as a member due to administrative error, may upon application receive credit for the time such person was otherwise eligible for membership. The person's employer must certify the inclusive dates of employment and the salary earned by the member during these dates, or the person shall submit such other evidence in lieu thereof as shall be requested by the board. The person, his employer, and any other person submitting evidence on his behalf, shall certify all evidence by an affidavit in authentic form. Should any facts or evidence not be true which would disqualify him from benefits, the person shall lose all rights to any benefits from this system. In order to receive this credit the person and the employer shall pay the greater of: an amount equal to the employee and employer contributions which would have been paid had the person been enrolled at the time of employment, plus interest as determined by the board, which shall be not less than seven percent compounded annually, or an amount which, on an actuarial basis, totally offsets the increase in accrued liability of the system resulting from the receipt of the credit by the person. The amount payable shall be calculated by use of the actuarial funding method, assumptions, and tables in use by the system at the time of the person's application for credit. (Emphasis added.)
Interpretation of a statute begins with the language of the statute itself.[1] When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La.C.C. art. 9; La.R.S. 1:4. When the wording of a section of the revised statutes "is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." La.R.S.1:4.
In this case, you indicated that the employees in question were enrolled as members of PERS at the time the Court failed to make full contributions on their behalf due to an administrative error. As such, La.R.S. 11:1939, which expressly only applies in the *Page 3 
case where an employee was not enrolled as a member due to an administrative error, does not apply in this situation.
Similarly, we also believe that La.R.S. 11:158 is inapplicable in this instance. That statute appears to only apply when a member purchases service credit (for example, the purchase of military service credit under La.R.S. 11:152). Service credit is a function of time, and not a function of compensable earnings. See, for example, La.R.S. 11:1925 and La.R.S. 11:1927. In this instance, only a member's potential final compensation under La.R.S. 11:1902(14) is affected by the employer's failure to pay the correct amount of employee contributions to PERS.
Moreover, under La.R.S. 11:281, generally ". . . all payments of employers' contributions and employees' contributions, including any payments due from the state of Louisiana which are paid after becoming delinquent, shall include interest to be paid to the retirement system at the rate of legal interest computed from the date the payment became delinquent." Additionally, with regard to delinquent employer contributions, under La.R.S. 11:2014, if PERS files suit against an employer or has such contributions deducted from other moneys payable to the employer by any department or agency of the state, the delinquent employer must pay interest at the rate of one and one-half percent per month compounded monthly.
Thus, it is the opinion of this office that La.R.S. 11:281 generally applies in a situation where an employer, due to administrative error, failed to make full contributions to PERS on behalf of an employee who was enrolled as a member during the period for which contributions are due; accordingly, the employer would only be liable for the unpaid contributions plus legal interest, as provided for in that statute.
Nevertheless, with regard to delinquent employer contributions only, if PERS files suit against an employer or has such contributions deducted from other moneys payable to the employer by any department or agency of the state, the delinquent employer must pay interest at the rate of one and one-half percent per month compounded monthly.
Finally, we note that PERS alternatively maintains that the Court must pay the actuarial amount, because PERS is prohibited by La.Const. art. X from taking any action that would result in actuarial unsoundness for the retirement plan. Nevertheless, as the Louisiana Supreme Court has held, the state constitutional mandate of actuarial soundness of the state and statewide public retirement systems does not dictate how that actuarial soundness is to be accomplished.[2] Rather, the mechanism by which actuarial soundness is achieved is left to the discretion of the legislature.[3] *Page 4 
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY:__________________________ BENJAMIN A. HUXEN II Assistant Attorney General
 JDC/BAH II
[1] David v. Our Lady of the Lake Hosp., Inc., 02-2675, p. 11 (La. 7/2/03), 849 So.2d 38, 46; Touchard v. Williams, 617 So.2d 885, 888 (La. 1993).
[2] Louisiana Municipal Association v. State, 2004-0227 p. 58 (La. 1/19/05), 893 So.2d 809, 850-851. Id.
[3] Id.