JjCHARLES R. JONES, Judge.
The relator, Southern Baptist Hospital, seeks to invoke our supervisory jurisdiction to review of the judgment of the district court granting the respondents’, Melinda Christiana and Nicholas Christiana Jr. (hereinafter “the Christianas”), motion for partial summary judgment, having found the inapplicability of La. R.S. 9:2797 and La. C.C. art. 2322.1 (hereinafter “the Blood Shield Statutes”), to the respondents’ claims for damages arising out of injuries allegedly caused by a contaminated blood transfusion. We grant the relator’s writ application and vacate the judgment of the district court.
Procedural History
On August 11,1992, the Christianas filed a petition for damages against the Relator, Southern Baptist Hospital (hereinafter “Baptist”), and the Administrators of the Tulane Educational Fund, d/b/a Tulane Medical Center (hereinafter “Tulane”). Baptist initially filed an Answer, averring that at all pertinent times it was a qualified health care provider under the Louisiana Medical Malpractice Act, and thus entitled to the limitation of liability set forth therein. The district court granted the Christianas motion to strike that portion of Baptist’s Answer, and Baptist sought review of that judgment in writ no. 2002-C-2750. This Court ^denied the writ application, citing Patin v. Administrators of Tulane Educational Fund, 99-3027 (La.App. 4 Cir. 8/16/00), 770 So.2d 816.[1] Bap *811 tist filed writs with the Louisiana Supreme Court. The Supreme Court denied writs on May 23, 2003, noting that Baptist had an “adequate remedy on appeal.”
The Christianas subsequently filed a Motion for Partial Summary Judgment on June 18, 2003, seeking a favorable judgment that the Blood Shield Statutes were not applicable to the Christianas’ strict liability claims against Baptist for the distribution of the alleged contaminated blood products received by Mrs. Christiana in 1984. Noting that the court had already concluded that Baptist was a distributor of blood, the Christianas stated that at the time of the blood transfusion, the Blood Shield Statutes did not include distributors in the class of health care providers protected by the statute. The district court rendered a judgment granting the Christi-anas’ Motion for Partial Summary Judgment. It is from this judgment that Baptist seeks review.
Facts
The Christianas maintained that Melinda Christiana was diagnosed with the human immunodeficiency virus (HIV) in 1988. She stated that she contracted the condition from one or more transfusions of HIV-tainted blood received on September 27, 1984, while she was a patient undergoing treatment for acute leukemia at Tulane. The transfused blood received by Mrs. Christiana consisted of ten units of red blood cells, thirty units of platelet concentrates and ten units of | Splatelets from platelet pheresis. Eleven units of the platelet concentrates came from blood drawn, screened, and tested by Baptist, and the remainder of the blood products came from blood drawn, screened, and tested by Tulane. Arguing that the tainted blood received by Melinda Christiana was manufactured, distributed and/or supplied by Tulane and/or Baptist, the plaintiffs asserted causes of action in strict liability as well as negligence.
Discussion
La. C.C.P. art.1915 provided that judgments granting motions for partial summary judgment under La. C.C.P. art. 966 were considered final judgments.[2] Thus, in Douglass v. Alton Ochsner Medical Foundation, 96-2825 (La.6/13/97), 695 So.2d 953, the court held that the proper vehicle for seeking review of such judgments was by appeal. However, shortly after Douglass was decided, the legislature enacted La. Acts 1997, No. 483, § 2, amending La. C.C. P. arts. 966 and 1915. The amendment to La. C.C.P. art. 966 made it clear that the district court had the authority to grant a partial summary judgment.[3] The amendment to La. C.C.P. art.1915 made it clear that the grant of a partial summary judgment disposing of a particular issue was no longer considered a final appealable judgment unless the parties agreed that it was final or the trial court designated the judgment as a final *812 judgment, after making an express determination that there was [4“no just reason for delay.”[4] Pursuant to La. C.C.P. art. 1915, as amended by. La. Acts 1997, No. 483, § 2, the judgment granting the Chris-tianas’ Motion for Partial Summary Judgment is not a final appealable judgment.[5] Since a court of appeal has plenary power to exercise supervisory jurisdiction over district courts and may do so at any time, the issue of whether this Court should exercise its supervisory jurisdiction to review such judgments appears to be left to the sound discretion of the court. Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
In their Motion for Partial Summary Judgment, the Christianas alleged that the provisions of La. R.S. 9:2797 and La. C.C. art. 2322.1, which prohibit the imposition of strict liability in cases involving the distribution of blood, do not apply to their strict liability claims against Baptist for the distribution of defective blood products. In support of their motion, the Christianas alleged that it was undisputed that: 1) Baptist distributed eleven units of platelets to Tulane on or [sabout 9/27/84; 2) these platelets were transfuse to plaintiff, Melinda Christian; 3) at the time of the conduct giving rise to the plaintiffs’ claims, La. R.S. 9:2797 and La. C.C. art. 2322 did not provide a defense for strict liability claims for. the distribution of defective blood products; and 4) in 1990, the Louisiana Legislature amended La. R.S. 9:2797 and La. C.C. art.2322 to include a defense to strict liability claims based on the distribution of defective blood products.
The Christianas further contend that because the word “distribution” was not included in La. R.S. 9:2797 or La. C.C. art. 2322 until 1990, the statutes did not cover the distribution of defective blood products prior to that time. Noting that the statutes in effect at the time of the transfusion govern this-action, the Christianas argue that because Baptist was a distributor of blood products to Tulane, the Blood Shield Statutes did not apply to Baptist.
It is undisputed that a cause of action in strict tort liability is a vested property right, and that laws enacted after the cause of action arises cannot be retroactively applied to divest the plaintiff of his vested right in his. cause of action. Fan *813 cheaux v. Alton Ochsner Medical Foundation Hospital & Clinic, 470 So.2d 878 (La. 1985). Accordingly, the parties agree that the law in effect as of 1984 when the blood transfusion took place is the law that governs the case. While neither of the parties dispute the fact that Baptist would be considered a distributor of blood, both disagree on the issue of whether the strict liability prohibition contained in the Blood Shield Statutes in effect in 1984 applied to distributors of blood.
| RThe Blood Shield Statute, former La. C.C.P. art. 1764, was enacted by the legislature in 1968, and subsequent statutes on the issue were later enacted. However, the only “Blood Shield Statutes” at issue in this case are the ones in existence in 1984, when Mrs. Christiana received her blood transfusions. In 1984, the law on strict liability was codified in La. R.S. 9:2797, as amended by Acts 1982, No. 204. This statute was originally added pursuant to the passage of 1981 Acts no. 331, § 1. La. C.C. art. 2322.1, containing almost identical language, which was also added to the Civil Code that same year pursuant to the passage of 1981 Acts, No. 611, § l.[6] As amended and reenacted in 1982, La. R.S. 9:2797 provided in relevant part:
Section 1. R.S. 9:2797 is hereby amended and reenacted to read as follows:
§ 2797. Users of blood, organs, or tissue; viral diseases
Strict liability or liability of any kind without negligence shall not be applicable to physicians, hospitals, hospital blood banks, or non-profit community blood banks in the screening, processing, transfusion, or medical use of human blood and blood components of any kind and the transplantation or medical use of any human organ, human tissue, or approved animal tissue which results in transmission of viral disease undetectable by appropriate medical and scientific laboratory tests.
The Christianas correctly note that the word “distribution” is not listed in the above-cited language. Rather the word “distribution” was not included in the Blood Shield Statutes until 1990 when the Legislature passed Act. No. 1091, §§ |7land 2, which amended and reenacted La. R.S. 9:2797 and La. C.C. art. 2322.1. House Bill No. 1657. That act, which provided the language for both provisions as they now exist, reads in pertinent part, as follows:
AN ACT
To amend and reenact Civil Code Article 2322.1 and R.S. 9:2797, relative to offenses and quasi offenses; to provide for limitation of liability of users of blood, organs, and tissue; to provide for standards of screening, procurement, and processing of blood, organs, and tissue; and to provide for related matters.
Be it enacted by the Legislature of Louisiana:
Section 1. Civil Code Article 2322.1 is hereby amended and reenacted to read as follows:
Art. 2322.1 Users of blood, organs, or tissue; a medical service
The screening, procurement, processing, distribution, transfusion, or medical use of human blood and blood compo *814 nents of any kind ... by physicians, dentists, hospitals, hospital blood banks, and nonprofit community blood bans is declared to be, for all purposes whatsoever, the rendition of a medical service by each and every physician, dentist, hospital, hospital blood band, and nonprofit community blood bank participating therein, and shall not be construed to be and is declared not to be a sale. Strict liability and warranties of any kind without negligence shall not be applicable to the aforementioned who provide these medical services.
Section 2. . R.S. 9:2797 is hereby amended and reenacted to read as follows:
§ 2797. Users of blood, organs, or tissue; a medical service
The screening, procurement, processing, distribution, transfusion, or medical use of human blood and blood components of any kind ... by physicians, dentists, hospitals, hospital blood banks, and nonprofit community blood banks is declared to be, for all purposes whatsoever, the rendition of a medical service by each and every physician, dentist, hospital, hospital blood bank, and nonprofit community blood bank participating therein, and shall not be construed to be and is declared not to be a sale. Strict liability and warranties [sof any kind without negligence shall not be applicable to the aforementioned who provide these medical services.
In their opposition memorandum, the Christianas argue that the 1990 amendment to the statutes is remedial, and that prior to that time, the statutes did not cover distributors. However, the Christia-nas cite no cases wherein any court held that the 1990 amendment was remedial. There are also no jurisprudence stating that hospitals and hospital blood banks that distribute blood were not covered by the strict liability provisions of the 1982 Blood Shield Statutes.
Alternatively, the Christianas cite Popich Bros. Water Transport, Inc. v. Gulf Coast Marine, Inc., 1997-0902 (La.App. 4 Cir. 1/14/98), 705 So.2d 1267, for the proposition that the inclusion of the word distribution in the 1990 amendment clearly indicates that the Legislature intended to change the law to include distributors as of that date. Although the Christianas use Popich to support their argument, their reliance upon this case is misplaced. Po-pich involved the deletion of statutory language requiring brokers to investigate insurers. Because the legislature changed the statute and deleted the provision providing for such a requirement, the district court concluded that the legislature was presumed to have intended to change the law.
In amending the Blood Shield Acts in 1990, the legislature did not simply delete or add a provision that expressly covered distributors of defective blood. Rather, the legislature rewrote the entire section. Although neither the Christianas nor Baptist provided documents detailing the legislative history of the Blood Shield Statutes, Baptist argues that one purpose of the 1990 amendment is to incorporate provisions of the earlier 1968 Blood Shield Statute and the 1982 Blood Shield Statute into the same sections of the law. It notes that the wording added to |flthe Blood Shield statute in 1990, lifted from the 1968 blood shield statute (former La. C.C. art. 1764)) the pronouncement that activities involving blood by healthcare providers and nonprofit community blood banks were not to be construed as the “sale” of blood, and “warranties” would not be applicable to those activities. The Christianas argue that the 1990 amendment also eliminated the provision in the 1982 statute, which limited the exemption from strict liability *815 to transfusion-acquired “viral diseases undetectable by appropriate medical and scientific laboratory tests.”
A review of the language contained in the 1990 amendment supports Baptist’s argument that one reason for the amendment was to incorporate some of the language from the earlier 1968 Blood Shield Statute.[7] In Reed v. St. Charles General Hospital, 2001-1148 (La.App. 4 Cir. 3/27/02), 815 So.2d 319, this Court acknowledged the major change made by the 1990 amendment to the Blood Shield Statutes on the law regarding strict liability. In considering the prescriptive period applicable to a strict liability claim for damages caused by contracting AIDS from a blood transfusion that occurred in 1985, this court stated:
In 1982, strict liability claims for blood transfusions were not abolished by statute, but were restricted to cases where viral diseases and infectious agents were “detectable” by appropriate medical and scientific tests. It was not until 1990 that strict liability for blood transfusions was statutorily abolished .... (emphasis added)
Id. at p. 3, 815 So.2d at 321.
| inWhile recognizing that the 1982 Blood Shield Statutes contained a more restrictive type of strict liability than provided by the 1990 amendment, this Court was not called upon to address the issue of whether distributors were covered by the restrictive type of strict liability found in the Blood Shield Statutes prior to the 1990 amendment. In fact, it appears that the issue of whether the earlier statutes covered distributors has apparently only been mentioned in one reported case. In LeBlanc v. Meza, 92-1040 (La.App. 3 Cir. 6/16/93), 620 So.2d 521, the Third Circuit in dicta expressly refused to read La. R.S. 9:2797 to exclude claims for distribution of defective blood. The patient in LeBlanc alleged that she became infected with the HIV virus by virtue of a blood transfusion received in 1985. She and her husband sued the hospital where the transfusion took place and the various physicians who treated her. The defendants contended that the hospital did not and could not have tested its blood supply for HIV until at least March 20, 1985, when a newly released test for detecting HIV in blood samples was received by distributors. In response to the plaintiffs’ strict liability claim against the hospital, the court stated, “Pursuant to La. R.S. 9:2797, we reject the plaintiffs’ strict liability claim against Lourdes [the hospital]. We decline to carve an exception out of § 2797 for the ‘distribution’ of defective blood.” Id. at 523.
In the present case, the Christianas argue that LeBlanc is not applicable because the defendant hospital in LeBlanc had a health care provider/patient relationship with the petitioner. Thus, this Court’s holding in Patin, in which we emphasized the need for a healthcare provider/patient relationship in medical malpractice cases, would not be applicable to a LeBlanc type situation.
InFurther, there is nothing in the 1982 Blood Shield Statutes to suggest the *816 legislature intended to limit protection from strict liability claims to hospitals having a healthcare provider/patient relationship with the recipient of the transfusion. Rather, the 'language of the statute expressly covers hospitals, hospital blood banks, and non-profit community blood banks. If the legislature intended to only cover physicians and/or hospitals with a healthcare provider or patient client relationship with the patient, it could easily have said so as it did in the Medical Malpractice Act.
Moreover, the holding in Patín appears to have been severely diminished by the ruling in the more recent case of David v. Our Lady of the Lake Hospital, 2002-2675 (La.7/2/03), 849 So.2d 38, wherein the Supreme Court found that the plaintiffs action for damages allegedly resulting from á contaminated blood transfusion administered by a hospital in 1979 was barred by the three-year prescriptive period for medical malpractice actions of La. R.S. 9:5628. In reaching this conclusion, the court reasoned that the plain wording of the statutes demonstrated the statute applied to all actions arising out of patient care. The court stated: “The statute contains no qualifying or limiting language that would negate its application to a strict liability action brought against a hospital for an act arising out of patient care. The words “or otherwise” are all inclusive of actions regardless of the factual bases involved or the legal theories asserted. Further, applying the prescriptive period of LSA-R.S. 9:5628 to strict liability actions arising out of patient care is consistent with the legislative policy for which the statute was enacted, specifically, to avoid medical malpractice insurance crises, (citations omitted).” David, at p. 13, 849 So.2d at 47-48. Additionally, the court stated, “The placement of La. R.S. 9:5628 in Title 9 instead of in the MMA indicates a | ^legislative intent that the statute’s provisions apply to claims against “any ... hospital,” not just hospitals qualified under the MMA ...” Id. at p. 15, 849 So.2d at 49.
This same line of reasoning would seem to dictate that the 1982 Blood Shield Statute was applicable to all hospitals and all hospital blood banks. It is well settled that the meaning of a law must first be sought in the language employed. If the language is clear and unambiguous and application of the unambiguous statute does not lead to absurd results, the law shall be applied as written. David v. Our Lady of the Lake Hospital, Inc., 2002-1945 (La.7/2/03), 849 So.2d 38. Words and phrases are to be construed according to the common and approve usage of the language. Id. The proper connotation to be placed on a word in a statute does not depend on an isolated definition attributable to it; instead, the word and the context in which it is used shall be considered. Id.
In applying these rules of statutory construction, it is apparent that the language of the 1982 statute clearly evidenced the legislature’s intention to shield “physicians, hospitals, hospital blood banks, and non-profit community blood banks” from claims of “[s]trict liability or liability of any kind without negligence ... in the screening, processing, transfusion, or medical use of human blood and blood components of any kind ... which results in transmission of viral disease undetectable by appropriated medical and scientific laboratory tests.” Notwithstanding the omission of the word distributor or distribution, the clear wording of the earlier 1982 statute appears to suggest the legislature intended to cover all hospitals and hospital blood banks. Assuming the legislative intent was to limit the statute to hospital distributors using their own blood, it is difficult to understand why the legislature *817 would have included hospital blood banks, and nonj£rofit13 community blood banks as entities covered by the statutes. The sole function of these entities is to screen and process blood products. One would ordinarily not expect these entities to actually perform blood transfusions. Accordingly, the only logical interpretation to be reached considering all the words in the statute is that the intent was to cover all hospitals.
The result to be reached by holding that the statute does not cover distributors is absurd. Based on the plaintiffs’ reasoning, the statute would protect Tulane, the hospital actually performing the transfusion and the hospital that supplied most of the blood given to Mrs. Christiana, while Baptist, who merely supplied Tulane with a small portion of the blood used in the transfusion, would not be protected. Additionally, as in David v. Our Lady of the Lake Hospital, placement of the Blood Shield Statutes in Title 9 could also be said to be indicative of the legislature’s intent to protect all hospital blood banks, as well as other health care providers, who screen and process blood products from strict liability claims.
Although no other cases could be located wherein a court specifically addressed the issue of whether the 1982 versions of the Blood Shield Statutes abolished strict liability for distribution of defection blood products, the LeBlanc court’s conclusion that La. R.S. 9:2797 did not include any exception for distribution of defective blood is supported by the jurisprudence and the legislative history of the Blood Shield Statutes. The statutes were specifically enacted in response to DeBattista v. Argonaut-Southwest Insurance Co., 403 So.2d 26 (La.1981), wherein the Louisiana Supreme Court first enunciated the idea of strict liability for blood transfusion. Chauvin v. Sisters of Mercy Health System, St. Louis, Inc., 2001-1834 (La.App. 4 Cir. 5/8/02), 818 So.2d 833, 836, writ denied, 2002-1587 (La.9/30/02, 825 So.2d 1194). In DeBattista, the Louisiana Supreme Court affirmed the 114district court’s finding of no negligence on the part of the hospital, but found the defendants strictly liable in tort, holding that blood contaminated with hepatitis virus is defective, i.e., unreasonably dangerous to normal use. The Court recognized health care providers’ exposure to strict products liability claims arising out of defective blood transfusions, reasoning that “[a] distributor of blood is strictly liable in tort when blood he places on the market creates an unreasonable risk of harm to others and, in fact, results in injury or disease to a human being.” Id., 403 So.2d at 32; also see, Faucheaux v. Alton Ochsner Medical Foundation Hosp. and Clinic, 470 So.2d 878, 879 (La.1985).
The 1982 statute was clearly enacted to address the problems created by DeBattis-ta, a case involving liability for distribution of blood. The statute did not expressly make a distinction between hospitals that actually provided blood from their own blood banks and hospitals that obtained blood needed for transfusions from other hospital blood banks. Therefore, the district court erred as a matter of law in concluding that as of 1984, when the transfusion was received, strict liability applied.

DECREE

This Court grants the writ application of the Relator, Southern Baptist Hospital, and vacates the judgment of the district court granting a motion for partial summary judgment in favor of Melinda Chris-tiana and Nicholas Christiana, Jr.
WRIT GRANTED.
MURRAY, J., concurs with reasons.

. In Patin, the plaintiffs sued Tulane Medical Center and Touro Infirmary after Mr. Patin contracted the HIV virus from a blood transfusion he received in 1980 while a patient at Tulane. Touro had supplied the allegedly tainted blood. Touro filed an exception of prematurity, alleging that plaintiffs had not submitted their claim to a medical review panel as required under the Louisiana Medical Malpractice Act ("MMA”). This court held that the MMA did not apply to the claim against Touro because, although Touro was a *811 "health care provider” under the MMA, there was no “health care provider-patient relationship” between Xouro and Mr. Patín, the Tulane patient who received the blood.

. At that time, La. C.C.P. art.1915 provided in relevant part:
A. A final judgment may be rendered and signed by the court, even though it may not grant ... all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
# ^ !¡C #
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969....

. La. C.C. P. art. 966 was amended to add section E, which states, "A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.”

. La. C.C.P. art.1915 was amended to provide, in pertinent part:
Art.1915. Partial judgment; partial exception; partial summary judgment
A final judgment may be rendered and signed by the court, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court: (3) Grants a motion for summary judgment, as provided by Articles 966 through 969, including a summary judgment granted pursuant to Article 966(E).
(B)(1) When a court renders a partial judgment or partial summary judgment ... the judgment shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay. (emphasis added) il) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal....

. This same designation requirement is found in the current version of La. C.C.P. art.1915, as amended by La. Acts 1999, No. 1263 § 1. However, the 1999 act states that the act only applies to actions filed on or after the January 1, 2000 effective date of the amendment. Because the instant action was filed in 1992, the 1999 amendments do not apply. However, the 1997 amendment became effective on July 1, 1997, the date the governor signed the Act.

. This court in Casey v. Southern Baptist Hospital, 526 So.2d 1332 (La.App. 4th Cir. 1988) found both acts unconstitutional because of procedural defects involved in the passage of the statutes. However, noting that La. R.S. 9:2797, which contained identical provisions of La. C.C. art. 2322.1, was amended and reenacted by Acts 1982, No. 204 § 1, effective July 15, 1982, the court concluded that its finding of unconstitutionality, insofar as it related to R.S. 9:2797, extended only until July 15, 1982.

. The earlier Blood Shield Statute, La.C.C. art. 1764 (now repealed), was amended by Act 301 of 1968, adding section B, to provide as follows:
Notwithstanding the provisions of Section A.2. of this Article, the implied warranties of merchantability and fitness shall not be applicable to a contract for the sale of human blood, blood plasma or other human tissue or organs from a blood bank or reservoir of such other tissues or organs. Such blood, blood plasma or tissue or organs shall not for the purposes of this Article be considered commodities subject to sale or barter but shall be considered as medical services.